James E. McDONALD II, Joan Reid, and Janis Beall; and James E. McDonald II and Joan McDonald Reid, as Personal Representatives of James E. McDonald, Deceased *v.* Lamar PETTUS

98-975 988 S.W.2d 9

Supreme Court of Arkansas
Opinion delivered April 15, 1999

266

*Timothy O. Dudley*, for appellants.

*Wright, Lindsey & Jennings*, by: *H. Keith Morrison* and *Robert W. George*, for appellees.

ANNABELLE CLINTON IMBER, Justice. This is a legal-malpractice case. The appellants, the children of James E. McDonald and the personal representatives of his estate, contend that the trial court erred when it dismissed by summary judgment their legal-malpractice claims against the appellees, Lamar Pettus and the Pettus Law Firm. We affirm the dismissal of the claims brought by the children, and the tort claim brought by the personal representatives. However, we reverse and remand the dismissal of the breach-of-contract claim brought by the personal representatives on behalf of the decedent.

James E. McDonald and his wife, Georgia McDonald, jointly owned property located in Fayetteville. In the fall of 1990, the McDonalds hired Lamar Pettus and the Pettus law firm (hereinafter collectively referred to as "Mr. Pettus") to prepare their wills. In his will, James gave his interest in the Fayetteville property to his children of a prior marriage, James E. McDonald, II, Joan

Reid, and Janis Beall (the "children"). In contrast, Georgia did not specifically mention the Fayetteville property in her will.

In October of 1991, the McDonalds sold the Fayetteville property in exchange for promissory notes that were worth approximately $250,000. The McDonalds then hired Mr. Pettus to prepare codicils to their wills, which were executed on February 25, 1994. In his codicil, James left his interest in the promissory notes to his children. Again, Georgia did not specifically mention either the Fayetteville property or the promissory notes derived therefrom in her codicil. The dispute in this case centers upon whether James and Georgia McDonald hired Mr. Pettus to also prepare an assignment whereby Georgia would convey her interest in the promissory notes to either her husband, James McDonald, or directly to James's children.

James died on April 16, 1994, before Georgia signed any assignment of her interest in the promissory notes. After her husband's death, Georgia refused to relinquish her interest in the promissory notes to the children.

Soon thereafter, the children filed a legal-malpractice claim against Mr. Pettus. In their complaint, the children alleged that Mr. Pettus was "charged with the responsibility of preparing assignments" of the promissory notes and "overseeing the execution" of those assignments. The children contended that Mr. Pettus's failure to discharge that responsibility was a tort and a breach of contract. The complaint was later amended to add as plaintiffs James E. McDonald, II, and Joan Reid, as personal representatives of their father's estate, in addition to naming them as plaintiffs in their individual capacities as heirs.

The trial court dismissed, by summary judgment, the children's individual claims against Mr. Pettus because "A.C.A 16-22-310 precludes the Defendants herein from liability for civil damages in this cause of action." Then on April 24, 1998, the trial court entered a second order of summary judgment dismissing the remaining legal-malpractice claims asserted by the personal representatives of James McDonald's estate. The trial court explained that summary judgment was proper because the personal representatives did not have standing to bring, on James McDonald's

behalf, a malpractice claim against Mr. Pettus, and even if they did, the facts taken as true did not "rise to the level of establishing malpractice on the part of the Defendant."

On appeal, the children and the personal representatives of James McDonald's estate contend that the trial court erred when it granted summary judgment as to each of their legal-malpractice claims against Mr. Pettus. In *Hall v. Tucker*, 336 Ark. 112, 983 S.W.2d 432 (1999), we recently summarized the major legal principles we use when reviewing the granting of a motion for a summary judgment as follows:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law.

*See also Estate of Donley v. Pace Indus.*, 336 Ark. 101, 984 S.W.2d 421 (1999); *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). The deciding factor in this case is for whose benefit the malpractice claims were brought.

## I. Claims Brought by the Children

First, the children contend that the trial court erred when it ruled in its first order of summary judgment that they did not have standing, *on their own behalf*, to bring a legal-malpractice claim against Mr. Pettus under the lawyer-immunity statute, Ark. Code Ann. § 16-22-310[1] (Repl. 1994). The Arkansas lawyer-immunity statute provides that:

---

[1] The lawyer-immunity statute is also codified at Ark. Code Ann. § 16-114-303 (Supp. 1997).

(a) *No person licensed to practice law* in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders *shall be liable to persons not in privity of contract with the person, partnership, or corporation* for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, *except for:*

(1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations; or

(2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:

(A) Identifies in writing to the client those persons who are intended to rely on the services, *and*

(B) *Sends a copy of the writing or similar statement to those persons identified in the writing or statement,* then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to those persons in privity of contract with the person, partnership, or corporation.

(Emphasis added.)

## A. The Privity Requirement

■ ■ Our analysis begins with the basic premise of statutory construction that we construe the statute just as it reads giving the words their ordinary and usually accepted meaning in common language. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998); *Vanderpool v. Fidelity & Cas. Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997). The plain language of Ark. Code Ann. § 16-22-310 requires the plaintiff to have direct privity of contract with "the person, partnership, or corporation" he or she is suing for legal malpractice. Likewise, we have narrowly

construed the privity requirement to require direct privity between the plaintiff and the attorney or entity to be held liable for legal malpractice. *See Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996); *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993). In particular, in *Clark* we said that "the language of this section [Ark. Code Ann. § 16-22-310(a)] is precise and clear and reveals that the contract contemplated by the statute relates to a contract for professional services performed by the *attorney for the client.*" *Clark, supra* (emphasis added).

### 1. Indirect Privity

It is undisputed that the children in this case did not have a contract for legal representation with Mr. Pettus. Hence, the trial court dismissed the children's claims for lack of privity as required by section 16-22-310. On appeal, the children raise two arguments in an attempt to satisfy the privity requirement.

First, the children claim that they were in privity with the decedent, James McDonald, who in turn was in privity with Mr. Pettus. We find no basis for this argument of indirect privity in the plain language of the lawyer-immunity statute or in our cases interpreting the Act. Furthermore, the two Arkansas cases cited by the children are unpersuasive because both merely dealt with the issue of whether heirs are in privity with a decedent, and not with the second and more important issue of whether this connection is enough to create privity with the decedent's attorney under the lawyer-immunity statute. *See Hardie v. Estate of Davis*, 312 Ark. 189, 848 S.W.2d 417 (1993); *Brown v. Imboden*, 28 Ark. App. 127, 771 S.W.2d 312 (1989). In fact, neither case even mentions the lawyer-immunity statute.

■ ■ We are equally unpersuaded by the children's citations to cases from other jurisdictions because Arkansas has a specific statute, which we have narrowly interpreted to require direct privity. How other jurisdictions have interpreted their immunity statutes that may or may not be similar to our statute is simply irrelevant. For these reasons, we reject the children's indirect-privity argument and hold that under the lawyer-immunity statute, Ark. Code Ann. § 16-22-310, a plaintiff must be in direct

privity with the attorney or entity being sued for legal malpractice.

## 2. Third-Party Beneficiaries

Next, the children argue that the trial court erred when it dismissed their legal-malpractice claim against Mr. Pettus because they have standing to bring the claim as intended third-party beneficiaries of the contract for legal representation between Mr. Pettus and James McDonald. Again, this argument is contrary to the plain language of the lawyer-immunity statute, Ark. Code Ann. § 16-22-310, which clearly requires direct privity between the client and the attorney or business entity being sued for legal malpractice.

■ Likewise, in *Swink v. Ernst & Young*, 322 Ark. 417, 908 S.W.2d 660 (1995), we held that an employee did not have standing as a third-party beneficiary to bring a malpractice claim against his employer's accounting firm for injuries he allegedly suffered as a result of the accounting firm's malpractice. Although *Swink* dealt with the accountant-immunity statute, Ark. Code Ann. § 16-114-302 (Supp. 1997), instead of the lawyer-immunity statute, Ark. Code Ann. § 16-22-310 (Repl. 1994), we hold that it is applicable to the case at hand because the language of the two acts is virtually identical.[2] Consequently, we reject the children's argument that they have standing, as third-party beneficiaries, to

---

[2] The accountant-immunity statute, Ark. Code. Ann. § 16-114-302 (Supp. 1997) provides that:

> No person, partnership, or corporation licensed or authorized to practice under the Public Accountancy Act of 1975, § 17-12-101 et seq., or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by such person, partnership, or corporation, except for:
>
> (1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations; or
>
> (2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:

bring a legal-malpractice claim against Mr. Pettus under Ark. Code. Ann. § 16-22-310.

## B. Exceptions to the Privity Requirement

This conclusion, however, does not end our analysis because the lawyer-immunity statute contains two exceptions to the privity requirement. First, no privity is required for "[a]cts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations." Ark. Code Ann. § 16-22-310(a)(1). This section is clearly inapplicable because the children did not assert fraud or intentional misrepresentations in their original or amended complaints.

The second exception to the privity requirement provides that:

> (2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:
>
> (A) Identifies in writing to the client those persons who are intended to rely on the services, *and*
>
> (B) *Sends a copy of the writing or similar statement to those persons identified in the writing or statement,* then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in

---

(A) Identifies in writing to the client those persons who are intended to rely on the services, and

(B) Sends a copy of the writing or similar statement to those persons identified in the writing or statement, then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to those persons in privity of contract with such person, partnership, or corporation.

The accountant-immunity statute is also codified at Ark. Code Ann. § 17-12-702 (Repl. 1995).

addition to those persons in privity of contract with the person, partnership, or corporation.

Ark. Code Ann. § 16-22-310(a)(2) (emphasis added). Even if we were to assume that Mr. Pettus was "aware that a primary intent" of drafting the codicils was to "benefit or influence the" children, and that the codicil was a "writing to the client" identifying "those persons who are intended to rely on the services," there is no evidence in the record that Mr. Pettus ever sent the codicil to the children as required by section 16-22-310(a)(2)(B).

■ ■ The children attempt to avoid this problem by arguing that it is inequitable and against public policy to allow an attorney to avoid liability by not sending notice of his duty to the intended beneficiaries. It, however, is well settled that the determination of public policy lies almost exclusively with the legislature, and the courts will not interfere with that determination in the absence of palpable error. *Arthur v. Adams*, 333 Ark. 53, 969 S.W.2d 598 (1998); *Owen v. Wilson*, 260 Ark. 21, 537 S.W.2d 543 (1976). The legislature has clearly spoken in section 16-22-310(a)(2) as to when and under what circumstances an intended beneficiary may bring a legal-malpractice claim. The children have simply failed to meet those statutory requirements.

■ Because the children have failed to satisfy the privity requirement or the exceptions contained in the lawyer-immunity statute, Ark. Code Ann. § 16-22-310, we affirm the trial court's dismissal of the children's malpractice claims against Mr. Pettus.

## II. Claims Brought by the Personal Representatives

Next, the personal representatives of James McDonald's estate contend that the trial court erred when it ruled in the second order of summary judgment that they did not have standing, under Ark. Code Ann. § 16-22-310, to bring a malpractice claim against Mr. Pettus. In contrast to the claims of the children, the personal representatives brought their tort and breach-of-contract claims *on behalf of the decedent, James McDonald.*

## A. The Privity Requirement

As with the claims brought by the children, we must first decide if the personal representatives have satisfied the privity requirement contained in section 16-22-310. In their brief, the appellees contend that the personal representatives brought their tort and breach-of-contract claims on behalf of the estate, and not on behalf of the decedent. Admittedly, the appellants's brief is somewhat unclear on this matter. However, during oral arguments the appellants clarified that the personal representatives were bringing the tort and breach-of-contract actions on behalf of the decedent, James McDonald, because the estate "stood in the shoes" of the decedent after his death. In other words, the estate became the decedent posthumously. In fact, during oral argument the appellees conceded that the estate would have every cause of action for negligence or breach of contract against Mr. Pettus that the decedent would have had.

In this case, there is no question that there was direct privity of contract between Mr. Pettus and the decedent, James McDonald. Because the estate is merely standing in Mr. McDonald's shoes in order to bring the claim on his behalf, we hold that the privity requirement of section 16-22-310 has been satisfied. Inasmuch as there is no privity problem related to the claims brought by the personal representatives, we must now decide whether the estate, acting on behalf of Mr. McDonald, can bring a malpractice claim, based in tort or upon a breach of contract, after the decedent's death.

## B. The Tort Claim

The Arkansas survival statute, Ark. Code Ann. § 16-62-101 (1987),[3] provides that a personal representative may bring a tort action *on behalf of the decedent* in the following instance:

---

[3] We recognize that the appellants did not raise this particular argument on appeal. The appellants, however, did raise the argument before the trial court, and we have said on several occasions that we will affirm a trial court's ruling if it is correct for a different reason. *See Howard v. The Dallas Morning News, Inc.,* 324 Ark. 91, 918 S.W.2d 178 (1996); *Higginbotham v. Waugh,* 313 Ark. 558, 856 S.W.2d 7 (1993). Thus, we will consider this argument only to determine if it is an alternative basis for affirming the trial court's ruling

(a) For *wrongs done to the person or property of another*, an action may be maintained against the wrongdoers, and the action may be brought by the person injured or, after his death, *by his executor or administrator against the wrongdoer* or, after his death, against his executor or administrator, in the same manner and with like effect in all respects as actions founded on contracts.

(b) Nothing in subsection (a) of this section shall be so construed as to extend its provisions to actions of slander or libel.

(Emphasis added.)

■ It is well settled that a survival action is for the recovery of damages the decedent suffered prior to death, while a wrongful-death action is for the recovery of damages the heirs suffered as a result of the decedent's death. *See Hicks v. Missouri Pac. R.R. Co.*, 181 F. Supp. 648 (W.D. Ark. 1960); *Nashville Lumber Co. v. Busbee*, 100 Ark. 76, 139 S.W. 301 (1911); *Southern Anthracite Coal Co. v. Hodge*, 99 Ark. 302, 139 S.W. 292 (1911).

Furthermore, in *Ellis v. Ellis*, 315 Ark. 475, 868 S.W.2d 83 (1994), we explained that "survival claims 'seek compensation for injuries sustained by the decedent himself *prior to death.*'" (quoting *First Commercial Bank, N.A. Little Rock v. United States*, 727 F. Supp. 1300 (W.D. Ark. 1990)) (emphasis added). This is logical because tort claims are for injuries to the person, which obviously could not occur after death.

■ In the case before us today, it is clear that the decedent, James McDonald, did not suffer any injuries or damages *prior to his death,* as required for tort actions brought pursuant to the survival statute, because the will could not have possibly taken effect until after his death. Hence, although there was privity between the decedent, James McDonald, and Mr. Pettus, the personal representatives' tort claim under the survival statute must nonetheless fail because James McDonald did not have a viable

---

that the personal representatives did not have standing to bring the legal-malpractice claim on behalf of the decedent. For the reasons explained herein, we do not think that the survival statute is a basis for affirming the trial court's ruling.

malpractice claim (due to the lack of a pre-death injury) against Mr. Pettus that survived his death. Thus, the trial court properly dismissed the personal representatives's tort claim against Mr. Pettus. Because we have concluded that the personal representatives's tort claim fails as a matter of law, it is unnecessary for us to address the appellees' arguments that there were no genuine issues of material fact as to proximate cause and duty.

## C. The Breach-of-Contract Claim

■ We, however, conclude that the breach-of-contract claim is notably distinguishable from the tort claim brought by the personal representatives. In particular, the survival statute provides that by virtue of the Act, tort claims survive "in the same manner and with the like effect in all respects as actions founded on contracts." Ark. Code Ann. § 16-62-101(a) (1987). Hence, a breach-of-contract action continues to exist beyond the decedent's death under common law, and does not depend upon the survival statute for its continued existence.

Likewise, section 28-49-104 (1987) of the probate code provides that a personal representative, administrator, or executor of an estate may pursue a legal action in the following instances:

> (a) When it appears to be for the best interest of the estate or in the case of an action for wrongful death or for the best interest of the estate or widow and next of kin, the personal representative, upon the authorization of or approval by the court, may effect a compromise settlement of any claim, debt, or obligation due or owing to the estate, whether arising in *contract or tort*, or he may extend, renew, or in any manner modify the terms of any obligation owing to the estate.

> (b) If the personal representative holds a mortgage, pledge, or other lien upon property of another person, he may, in lieu of foreclosure, accept a conveyance or transfer of the encumbered assets from the owner thereof in satisfaction of the indebtedness secured by the lien; if it appears for the best interest of the estate and if the court shall so order.

(Emphasis added.)

 From the plain language of this section of the probate code and our supporting case law, it is clear that a representative, administrator, or executor of an estate may bring a tort,[4] contract, or property-recovery action after the decedent's death. *See, e.g., Sanders v. Ryles,* 318 Ark. 418, 885 S.W.2d 888 (1994) (the personal representative of the estate brought a quiet-title action to enforce the decedent's rights to redeem real property subject to foreclosure); *Boling v. Gibson,* 266 Ark. 310, 584 S.W.2d. 14 (1979) (special administrator brought an action in chancery court to determine ownership of certificates of deposit issued in the name of the decedent and his two sons); *Brickey v. Lacy,* 245 Ark. 860, 435 S.W.2d 443 (1968) (the administrator of the estate brought an unlawful-detainer action against a tenant for an alleged breach of a lease agreement between the decedent and a tenant). Furthermore, other jurisdictions have recognized that the rights and liabilities under a contract, including rights under a contract requiring personal skill, pass by operation of law to the executor or administrator of a deceased person. 31 AM. JUR. 2D *Executors and Administrators* § 507 (1989) (citing *Pollard v. United States,* 384 F. Supp. 304 (M.D. Ala. 1974); *Burka v. Patrick* 366 A.2d 1070 (Md. App. 1976)).

 Unlike a tort claim brought under the survival statute, a breach-of-contract claim brought under the probate code does not require either a pre-death breach or pre-death damages. Hence, the personal representatives may bring on the decedent's behalf a breach-of-contract claim even though the breach and the resulting damages did not occur until after the decedent's death. If we held otherwise, a promissor would no longer be obligated to perform under a contract after the promissee's death. Likewise, attorneys would be immunized from all malpractice claims arising from will preparations because the heirs would not have standing to bring the claim, and the personal representatives could not bring the claim on the decedent's behalf because there would have

---

[4] Of course, tort claims also have to comply with the requirements of the survival statute, Ark. Code Ann. § 16-62-101 (1987), or the wrongful-death statute, Ark. Code Ann. § 16-16-102 (1987). As already explained, the personal representatives in this case could not bring a tort action under the survival statute because the decedent did not suffer any harm prior to his death.

been no pre-death breach or injury. Neither the language of the lawyer-immunity statute nor the probate code indicates that the General Assembly intended such a harsh result.

 For these reasons, we hold that under the probate code the personal representatives may bring on behalf of the decedent a breach-of-contract claim. Consequently, we hold that the trial court erred when it dismissed, by summary judgment, the breach-of-contract claim the personal representatives brought on behalf of the decedent.

 Furthermore, we acknowledge that summary judgment was erroneous as to the personal representatives' breach-of-contract claim because there were material factual disputes as to whether Mr. Pettus agreed to prepare any assignments and present them to Georgia McDonald for execution, and if so, whether the assignments were to provide for Georgia McDonald to assign her interest to her husband, James McDonald, or directly to the children. Likewise, whether Georgia McDonald would have executed any assignments presented to her before the decedent's death is also a disputed factual issue. These are all relevant questions as to whether a contract to prepare the assignments existed, whether it was breached, whether Mr. McDonald suffered any injury due to the alleged breach, and whether the damages are speculative.

For the foregoing reasons, we affirm the dismissal of the claims brought by the children, and the tort claim brought by the personal representatives. However, we reverse and remand the dismissal of the breach-of-contract claim brought by the personal representatives on behalf of the decedent.

Affirmed in part and reversed and remanded in part.

ARNOLD, C.J., not participating.