Billy SPENCER, *et al. v.* REGIONS BANK

CA 00-624                                    40 S.W.3d 319

Court of Appeals of Arkansas
Division I
Opinion delivered March 7, 2001

*Sloan-Rubens,* by: *Kent J. Rubens,* and *Timothy O. Dudley,* for appellants.

*Friday, Eldredge & Clark,* by: *William A. Waddell, Jr.,* for appellee.

JOHN B. ROBBINS, Judge. The appellants in this case, Billy Spencer, Jason G. Spencer, Adam W. Spencer, Ann E. Griffin Nelson, and Elizabeth L. Forbes, appeal the dismissal of their action, which they had brought against appellee Regions Bank ("Regions") in its capacity as the executor of their relative's will. Appellants contend that because of a drafting error in the will of Lois E. Burnett, a substantial amount of Ms. Burnett's personal property was not bequeathed to them as Ms. Burnett intended. Appellants wanted Regions to bring a malpractice suit against the attorney who drafted the will, but Regions did not, resulting in this action in Garland County Circuit Court in which appellants alleged negligence, breach of contract, and breach of fiduciary duty. The trial court entered summary judgment for Regions, and appellants appeal. We affirm.

A recitation of the history of this case is enlightening. The testatrix, Ms. Burnett, employed an attorney to prepare her will. The will was prepared, and Ms. Burnett executed it on March 6, 1992. She died on June 10, 1994, and her will was admitted to probate. The residuary clause of the will placed the residue of her estate in trust for the benefit of her friend, Flournoy Adkins. The terms of trust stated that Mr. Adkins would then possess the right for his lifetime to use of her automobile and her home. The will directed the trustee to distribute "the above described land" upon Mr. Adkins' death, one-half to her nephew William Spencer, Jr., and one-half to this nephew's six children (who include all five

appellants). Mr. Adkins died on November 19, 1998, and the realty passed to the designated devisees. However, because the will made no provision for disposition of the personal property, it passed to Ms. Burnett's heirs at law pursuant to the laws of intestate succession. At the time of Ms. Burnett's death in 1994, her real property was valued at $25,000, and her personal property was valued at $194,702.14.

After Mr. Adkins' death in 1998, Regions' predecessor in interest (First Commercial Trust Company) sought a declaratory judgment in Garland County Chancery Court requesting that the will be reformed to permit distribution of the personal property in the same manner as the real property, alleging that this was the intent of the testatrix. Ms. Burnett's brother, James Burnett, who was an heir of Ms. Burnett but who was not devised anything under her will, objected to Regions' position and averred that the will was not ambiguous and that the personal property should pass under the laws of intestacy. The chancellor allowed parol evidence to explain what he considered to be an ambiguity. This evidence included the testimony of the attorney hired to draft the will who admitted that a clerical error occurred and that Ms. Burnett had expressed an intent to disinherit her brother. The proceeding resulted in a decree, which in effect reformed the will to correct the clerical error. On appeal, the supreme court held that there was no ambiguity, that the will reflected Ms. Burnett's unambiguous intent to only distribute the land upon expiration of Adkins' life estate, and that the chancellor's order reforming the will would be reversed. *Burnett v. First Commercial Trust Co.*, 327 Ark. 430, 939 S.W.2d 827 (1997).

Thereafter, an order was entered in the Garland County Chancery Court permitting Regions to place the trust assets into the registry of the probate court, dismissing Regions from that litigation, and discharging and relieving Regions of any further responsibility regarding the trust. Six days later, appellants filed this action in Garland County Circuit Court contending that Regions had a duty on behalf of the estate to file suit against the negligent attorney to recover damages sustained as a result of Ms. Burnett's will not accurately expressing her testamentary desires, that it failed to do so in a timely fashion, and that any action against the attorney was now barred by the statute of limitations. Appellants claimed that Regions was liable for negligence, breach of fiduciary duty, and breach of contract. Regions answered by asserting that it had fulfilled the duties required of an executor under the law, that it had no duty to appellants regarding the trust generally or the personal property, and that there existed no contract between them to

breach. Regions then moved for summary judgment. After a hearing on the matter, the trial court concluded that, because appellants were not damaged by Regions' failure to sue the attorney, it did not make any difference whether Regions had breached any duty owed to appellants; the trial court therefore dismissed appellants' complaint with prejudice.

■ ■ Summary judgment is governed by Rule 56 of the Arkansas Rules of Civil Procedure. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c). The purpose of summary judgment is not to try the issues but to determine if there are any issues to be tried. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). All doubts and inferences are to be drawn in the light most favorable to the party resisting the motion, and summary judgment is not proper if reasonable minds could reach different conclusions when given the facts. *Tullock v. Eck*, 311 Ark. 564, 845 S.W.2d 517 (1993). If there is any doubt whatsoever, the motion should be denied. *Flentje v. First Nat'l Bank of Wynne, supra*. It should be noted that the supreme court has ceased referring to summary judgment as a drastic remedy; it is simply one of the tools in a trial court's efficiency arsenal. *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998).

Appellants argue that *McDonald v. Pettus*, 337 Ark. 265, 988 S.W.2d 9 (1999), stands for the proposition that persons who would have been designated as beneficiaries in a will but for the neglect of the attorney who prepared the will, have an avenue for recovery, i.e., through a breach of contract action by the executor against the attorney. In *McDonald* the supreme court discussed the various actions that might result from an attorney's negligence in an estate planning situation, including an action by the beneficiaries against the attorney. The supreme court concluded that, because of lack of privity, beneficiaries of the estate lacked standing to bring an action against the attorney unless the exceptions to the privity requirement enumerated in Ark. Code Ann. § 16-22-310 (Repl. 1999) were met, which would permit them to sue as third-party beneficiaries. The opinion in *McDonald* then proceeded to discuss whether the personal representative of the decedent's estate could bring an action. It held that the personal representative could not bring a tort claim against the attorney on behalf of the deceased testator because the decedent did not suffer any injury prior to his death, as is

required under the survival statute. Ark. Code Ann. § 16-62-101 (1987). The supreme court's opinion in *McDonald* ended on a positive note, however, by holding that the personal representative may bring a breach-of-contract action on behalf of the decedent's estate. The case was remanded to the trial court for further proceedings on the breach-of-contract claim.[1]

There is a very significant distinction, however, between the operative facts in *McDonald* and those in the case before us. In *McDonald*, the alleged negligence, or breach of contract, of the attorney pertained to certain promissory notes in which the decedent's wife had an interest. The decedent's children contended that the attorney was employed to prepare an assignment of these interests from their father's wife over to their father. It was not a case of failing to designate someone as beneficiary or failing to devise his entire estate. If the personal representative was successful in proving that the attorney had indeed failed to do what he was hired to do, there would have been damage to the estate to the extent of the value of the promissory notes that were not assigned to the decedent.

In the case at bar, however, the estate was not damaged by the failure of Ms. Burnett's attorney to direct disposition of the remaining personal property of her estate. The estate was not diminished by this failure, nor would the estate have been greater had there been such a dispositive clause in Ms. Burnett's will. Consequently, there were no damages to the estate to support a breach-of-contract action.

Assuming for sake of argument that Regions could have recovered some damages had it sued the attorney, any such recovery would not have passed to appellants. Funds recovered from the attorney would have passed by intestate succession to the same heirs who were entitled to inherit the personal property in the residue of Ms. Burnett's estate. Ms. Burnett's heirs at law would have received a windfall, but appellants would still have received nothing.

The trial court properly granted summary judgment and dismissed this action.

---

[1] On remand, a jury trial resulted in a judgment against the attorney for over $300,000. However, this judgment was reversed on appeal for failure of the decedent's children to prove that it was intended that the promissory notes involved in that case be assigned to the decedent and serve to benefit his estate. *Pettus v. McDonald*, 343 Ark. 507, S.W.3d (2001).

Affirmed.

NEAL, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I agree that based on the holdings in *McDonald v. Pettus*, 337 Ark. 265, 988 S.W.2d 9 (1999), and *Pettus v. McDonald*, 343 Ark. 507, 36 S.W.3d 745 (2001), we must affirm the trial court. However, I write separately to express my concern that our lawyer immunity statute, as written and construed by the supreme court, has the practical effect of undermining the confidentiality and trust integral to an attorney–client relationship and eroding the attorney–client privilege. It also suffers from the defect of threatening to circumvent a testator's intent — the cornerstone of will construction.

A portion of the lawyer–immunity statute, which is codified at Arkansas Code Annotated sections 16-22-310(a)(2) (Repl. 1994) and 16-114-303 (Repl. 1997), reads as follows:

> No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for:
>
> . . . .
>
> Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:
>
> (A) Identifies in writing to the client those persons who are intended to rely on the services, and
>
> (B) Sends a copy of the writing or similar statement to those persons identified in the writing or statement, then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the

persons intended to so rely, in addition to those persons in privity of contract with the person, partnership or corporation.

Upon applying the statute to the instant case, the following scenario must have had to occur in order for the testator to have effectuated her will. First, the attorney would have told the testator that in order for an intended third-party beneficiary to benefit from the will, the testator was required to allow the attorney to notify the beneficiary, or the testator must have done so. Had the testator agreed, the attorney would have then been required to provide the testator with a writing indicating that the testator hired the attorney to perform a service for the purposes of benefitting a named third party. The attorney or the testator then would have needed to provide the intended third-party beneficiary with a writing that expressed the intent of the testator that the named beneficiary would benefit from the testator's contract with the attorney. Although the foregoing exercise seems harmless at first blush, a closer look reveals troubling possibilities.

Rule 502 of the Arkansas Rules of Evidence governs the lawyer-client privilege, and mandates that clients have a privilege to refuse to disclose or to prevent others from disclosing confidential communications that occur as a result of an attorney providing legal services to a client. The Rule defines the term "confidential communication" as a communication that is not intended for disclosure to third persons other than disclosures that are necessary in order to render legal service or to transmit information. It is important to note that the privilege is held by the *client*, although attorneys may claim it on behalf of the client. *See* Ark. R. Evid. 502(c). *See also Sikes v. Segers*, 266 Ark. 654, 587 S.W.2d 554 (1979) (holding that the client, not the attorney, is the person given the privilege and the attorney may only claim privilege on behalf of a client).

The drafting of one's will is by its very nature, a private and personal matter. Our courts recognize this and as a result, have consistently held that the intent of the testator, determined from the face of the will, is given the utmost consideration. *See Chlanda v. Estate of Fuller*, 326 Ark. 551, 932 S.W.2d 760 (1996); *Merriman v. Yutterman*, 291 Ark. 207, 723 S.W.2d 823 (1987).

Because wills are private and personal, it is reasonable for a client to assume that the information exchanged with an attorney in the preparation of a will is confidential and thus protected from

disclosure to third parties. In other words, the client might reasonably believe that her communications regarding the will are privileged and fall within the ambit of Rule 502. However, given the mandatory disclosure requirement of the lawyer–immunity statute, a client who erroneously believes her communication is privileged is gravely mistaken because exercising her choice to will part of her estate to third party beneficiaries requires that she agree to sacrifice her privilege rights.

Additionally, Rule 1.6(a) of the Model Rules of Professional Conduct provides that "a lawyer shall not reveal information relating to representation of a client unless the client *consents* after consultation . . . . (Emphasis added.)" This rule suggests that a client who consults an attorney does so under a presumption that the relationship is confidential unless the client says otherwise. But the lawyer–immunity statute turns this presumption on its head, because the only way a testator may effectuate her intent to benefit third parties is to agree to expose the provisions of her will to third parties *before the will takes effect.* Thus, testators are placed in the precarious position of alerting those who may gain pecuniarily from their death and those who may not.

We should also consider the effects that the mandatory disclosure requirement to third party beneficiaries may have on the presumption that exists when beneficiaries procure a will. Our law has long been that beneficiaries who prepare or procure a will bear the burden of proving beyond a reasonable doubt that the procurement was not the result of undue influence or lack of testamentary capacity. *See Pyle v. Sayers,* 72 Ark. App. 207, 34 S.W.3d 786 (2000). Thus, an intended beneficiary who receives the required advance written notice that he or she will benefit from a will may be suspected of having procured a will and may face the heavy task of demonstrating lack of undue influence or testamentary capacity.

Also, the lawyer–immunity statute contemplates that an attorney will disclose to the client that the only way the client's third party beneficiaries may successfully sue the attorney is when the attorney or testator notifies the intended third party that the client intends that they benefit from the contract. But consider the plight of the intended beneficiaries where the attorney fails to advise the client about the notice requirement or who fails to provide written notification to intended third party beneficiaries. The statute shields attorneys who fail to follow its mandate, yet it provides no sword for intended third-party beneficiaries who lack written notification of a testator's intent to benefit them even if that failing resulted

from error by the attorney. The intended beneficiaries would not know their status until after the client's death. The decisions in *McDonald v. Pettus, Pettus v. McDonald,* and our decision in this case show beyond argument that the beneficiaries will face a sorry plight when they try to recover damages against the negligent lawyer whose client may have done all she knew to effect her testamentary intent.

Thus, in what is plainly an effort to shield lawyers from the consequences their negligence will produce when third-party beneficiaries such as appellants are not protected due to attorney error, the Arkansas General Assembly has created a major problem for potential testators, their relatives, the attorney-client privilege, and the ethical obligation owed by lawyers to clients making wills. When one appreciates the fact that the immunity statute that produces this result was initiated by lawyers, is construed by judges who are lawyers, and works to benefit lawyers, it is understandable why the public sometimes questions whether the legal profession can be trusted to promote the interests of clients above the interests of lawyers. The statute and our court decisions will not improve this crisis of confidence. As Pogo said, "We have met the enemy and he is us."