Irene GILES, as Trustee of Henry Giles Revocable Trust, Deceased; Irene Giles, as Trustee of Irene Giles Revocable Trust; Darlene Rush and Raymond Rush, as Co-Trustees of Raymond Rush Revocable Trust; Darlene Rush and Raymond Rush, as Co-trustees of Darlene Rush Revocable Trust v. HARRINGTON, MILLER, NEIHOUSE & KRUG, an Arkansas Professional Association; Estate of E. Wayne Krug; Stephen J. Miller; and Angela G. Berkowitz

04-1209                                              208 S.W.3d 197

Supreme Court of Arkansas
Opinion delivered May 12, 2005

340

*Williams, Hutchinson & Stone, LLP*, by: *Timothy C. Hutchinson* and *James A. Roe*, for appellants.

*Bassett Law Firm*, by: *Woody Bassett*; and *Anderson, Murphy & Hopkins, LLP*, by: *David A. Littleton* and *Brett D. Watson*, for appellees.

BETTY C. DICKEY, Justice. This appeal arises out of a legal malpractice lawsuit. In early 1997, Henry Giles and Darlene Rush, brother and sister and in their individual capacities, retained the law firm of Harrington, Miller, Neihouse & Krug (the Firm) to represent them in the sale of their family farm (the Property). In late 1997, with Henry Giles's death imminent, Krug advised Henry and Darlene, along with their spouses, Irene Giles and Raymond Rush respectively, to create four revocable trusts, with the trustees and beneficiaries being Henry, Irene, Darlene, and Raymond. Krug drafted the documents creating the trusts, which were finalized in January 1998.

At this time, Valley View Golf Properties, L.L.C. (Valley View) was interested in purchasing the Property and wanted to create an improvement district to finance the costs of improvements. Because only property owners can petition to form an

improvement district, Krug advised Darlene to deed one square foot of the Property to Valley View. Darlene did this with the understanding that if the development project fell through, the square foot would be deeded back.

In February 1998, Washington County Property Owners' Improvement District No. 5 (the District) was established, which was authorized to issue improvement district bonds to finance the cost of construction. Stephen C. Cosby assessed the value of benefits to be received by each of the owners of the property located within the District to be in the amount of $10,061,200. Henry, Irene, Darlene, and Raymond, as individuals, signed the improvement district petition, which contained the following language: IF THE DISTRICT IS FORMED, YOU MAY BE CHARGED FOR THE COST OF IMPROVEMENTS. Henry, Irene, Darlene, and Raymond asked Krug about this language, and he said that if they owned the land when the bonds were issued, they might be responsible for paying them off, but that they should not worry because they would sell the property before then. On February 12, 1998, the District was formed.

In accordance with Ark. Code Ann. § 14-93-101 *et seq.* a special tax was levied on the assessment of benefits. The levy is a special tax of the District that is pledged and allocated for retirement of the bonds, used to pay maturing principal and accrued interest on the bonds and to call bonds prior to maturity. Under Ark. Code Ann. § 14-93-119(b), the "tax so levied shall be a lien upon all the real property in the district from the time it is levied, shall be entitled to preference over all demands, executions, encumbrances, or liens whenever created, and shall continue until such assessment, with any penalty costs that may accrue thereon, shall have been paid. . ." Further, under Ark. Code Ann. § 14-93-123(e)(3) the "law shall be liberally construed to give to the assessment and tax lists the effect of bona fide mortgage for a valuable consideration, and a first lien upon the lands, as against all persons having an interest therein."

Before agreeing to sell the Property to Valley View, Henry, Irene, Darlene, and Raymond met with Krug at the Firm's office to go over the final terms of the transaction. They informed Krug that they wanted a first priority mortgage on the Property and that they would not take a second mortgage under any circumstance. According to the complaint, they specifically asked Krug what would happen if Valley View defaulted on the note and mortgage. Supposedly, Krug informed them that the land would be sold at a

foreclosure sale, that they would have first priority, and that their interests were protected, as the repossessed property would be much more valuable after the improvements were made. At no time did Krug or any attorney on the Firm's behalf inform them that the special tax lien would take first priority over their mortgage.

On February 12, 1999, Henry, Irene, Darlene, and Raymond, as individuals, sold the Property to Valley View for $1,240,000, obtained $340,000 in cash, a note for $900,000, and a first mortgage on the said note. J.C. Selph, one of the developers and a member of Valley View, also signed a personal guarantee for the first $250,000 in principal. Valley View executed a promissory note in favor of Henry Giles and Darlene Rush in the sum of $900,000. Valley View executed and delivered to Henry and Darlene a mortgage filed February 17, 1999, which encompassed a portion of the Property but excluded the land designated to be the golf course. On May 14, 1999, the assessment order was filed with the Washington County Tax Collector, and thereafter the District issued and sold bonds in the total principal amount of $7,135,000 to finance the improvements.

In early July 1999, Valley View requested that Henry, Irene, Darlene, and Raymond sign a corrected mortgage that would give up additional land to be used for the development of the golf course. Krug advised them that the corrected mortgage would not significantly affect their security, and on July 26 they accepted and executed the corrected mortgage. On August 12, 1999, the corrected mortgage was filed in Washington County. Subsequent to that filing, Henry, Irene, Darlene, and Raymond assigned all of their rights, title, and interest in and to the note and mortgage to the revocable trusts (the Trusts) that attorney Krug had set up in January 1998. At no time prior to the acceptance of the corrected mortgage did Krug or anyone from the Firm notify them that the corrected mortgage constituted a second priority and was subordinate to the special tax lien.

Pursuant to the note, Valley View began making monthly interest payments on May 12, 1999, with monthly installments of $15,657.52 to start on March 12, 2000, and to continue each month thereafter until February 12, 2006, at which time the entire principal and accrued interest would be due and payable. Upon the sale of individual lots, the proceeds were to be divided among the interested parties. The Trusts were to receive $1,300.00 per lot sold.

On October 10, 2001, Valley View failed to pay the $712,667.84 special tax that was due, and on November 12, 2001, Valley View failed to make the principal and interest payment due to the Trusts, and have failed to make subsequent payments on the note. The Trusts elected to declare the entire unpaid balance owed under the note, mortgage, and corrected mortgage and payable at once. At this point, the Trusts again retained the Firm to represent their interests.

On December 30, 2001, attorney Krug died, and Angela Berkowitz and Stephen Miller, both attorneys at the Firm, began representing and advising the Trusts. Neither Berkowitz nor Miller informed the Trusts of the special tax lien or of the first priority given to such a lien.

On January 28, 2002, the trustee of the bonds, Bank of the Ozarks, commenced an action against the guarantors of the bonds, which did not include the Trusts.

On January 29, 2002, Berkowitz prepared and Miller submitted and signed a complaint asking for judgment on the note and foreclosure of the Property in Washington County Circuit Court.

On February 12, 2002, a member of the Firm informed the Trusts of their subordinate position to the $890,834.80 special tax lien. After receiving this information, the Trusts terminated the services of the Firm and hired Williams & Hutchinson, L.L.P. to represent their interest in the foreclosure action.

On April 23, 2002, Bank of the Ozarks filed a complaint in intervention and foreclosure *in rem* and appointment of receiver. On June 17, 2002, the trial court granted the motion for appointment of a receiver and ordered that "all parties release their interest in the individual lot or lots to be sold. . ." The Trusts argued that this deprived them of their $1,300.00 share of the proceeds from the sale of the lots. On July 23, 2002, Bank of the Ozarks filed a motion for summary judgment asking the trial court to order that the special tax lien take first priority in any foreclosure action.

On July 26, 2002, the Trusts filed a complaint in Washington County Circuit Court against the Firm, the Estate of E. Wayne Krug, Michelle Harrington, Stephen J. Miller, John P. Neihouse, Angela G. Berkowitz, Sarah M. Leflar, and Thomas N. Kieklak. The complaint alleged three counts of legal malpractice, one count of breach of contract, and one count of fraud. The Defendants answered denying any legal malpractice claim, requesting dismissal

on Rule 12(b)(6) grounds, Rule 9(b) grounds, Rule 10(d) grounds, and "pleading affirmatively, defendants state this action is barred by the applicable statue of limitations." The Defendants filed an amended and substituted answer on October 30, 2002, adding that "pleading affirmatively, this matter should be dismissed for failure to comply with the Statute of Frauds."

On February 20, 2003, separate defendants Michelle Harrington, John Neihouse, Angela Berkowitz, Sarah Leflar, and Thomas Kieklak filed a motion for summary judgment based on Ark. R. Civ. P. 56, arguing that the Trusts alleged legal malpractice against attorneys who provided no legal services. The Trusts filed a motion for voluntary dismissal as to claims made against Michelle Harrington, John Neihouse, Sarah Leflar, and Thomas Kieklak, on February 26, 2003, which the trial court granted on April 15, 2003.

The remaining defendants (Appellees) filed a motion for summary judgment on December 1, 2003, asserting: (1) the principal claim brought against the estate of Krug is barred by the statute of limitations (claims of malpractice and breach of oral contract filed three years, five months after the land sale); (2) the remaining claims, or "secondary claims," against all defendants appear to be pleading artifices designed to overreach the statute of limitations, in that "all 'secondary claims' seek damages from the February 1999, land sale event;" (3) the secondary claims of malpractice and breach of contract seek to override the common law method of tolling the statute of limitations; (4) the secondary claims of fraud and fraudulent concealment lack any basis in fact and were not pled in good faith; and, (5) the plaintiff "sued only in their capacity as trustees, representing various trusts. But Defendants were not retained by the trusts concerning the 1999 land sale, and rendered neither legal advice nor legal services to the trusts concerning the land sale. No trustee had 'privity' with any Defendant, and by law, privity is an essential element of standing to assert Plaintiffs' claims."

After various other pleadings were filed, the trial court granted Appellees's motion for summary judgment in a letter order dated May 21, 2004, with the order granting summary judgment being filed on August 11, 2004. The trial court found that standing was dispositive of the case. The Trusts now argue that: (1) the trial court erred by ruling that no privity of contract existed between the Trusts and the defendants and, consequently, that the trusts lacked standing as to all counts of their complaint; and, (2) the trial

court committed reversible error by ruling that count one of the Trusts's complaint was barred by the statute of limitations; (3) the trial court erred in dismissing count two of the Trusts's complaint on grounds that it did not state a separate cause of action against the firm and Krug; and, (4) the trial court erred in granting summary judgment as to the active concealment and the fraudulent misrepresentation alleged in Trusts's complaint, because material issues of fact remain for the jury to decide. We hold that no privity of contract existed between the Trusts and the Appellees and affirm the trial court.

Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. See Ark. R. Civ. P. 56(c). *Meadow Lake Farms, Inc. v. Cooper*, 360 Ark. 164, 200 S.W.3d 399 (2004); *Swaim v. Stephens Production Co.*, 359 Ark. 190, 196 S.W.3d 5 (2004). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See Meadow Lake Farms, supra.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

The Trusts argue that the trial court erred by ruling that no privity of contract existed between the Trusts and the Appellees and, consequently, that the Trusts lacked standing as to all counts of their complaint. Ark. Code Ann. § 16-22-310(a) provides:

> (a) No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for:
>
> (1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations; or

(2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision (a)(2), if the person, partnership, or corporation:

(A) Identifies in writing to the client those persons who are intended to rely on the services, and

(B) Sends a copy of the writing or similar statement to those persons identified in the writing or statement,

then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to those persons in privity of contract with the person, partnership, or corporation.

Ark. Code Ann. § 16-22-310 (Repl. 1999).

This court has stated that the plain language of § 16-22-310 requires the plaintiff to have direct privity of contract with the person, partnership, or corporation he or she is suing for legal malpractice. *Jackson v. Ivory,* 353 Ark. 847, 120 S.W.3d 587 (2003); *Nielsen v. Berger-Nielsen,* 347 Ark. 996, 69 S.W.3d 414 (2002); *Madden v. Aldrich,* 346 Ark. 405, 58 S.W.3d 342 (2001); *McDonald v. Pettus,* 337 Ark. 265, 988 S.W.2d 9 (1999). Privity of contract is defined as "that connection or relationship which exists between two or more contracting parties." *Id.; Swink v. Ernst & Young,* 322 Ark. 417, 420-21, 908 S.W.2d 660 (1995) (citing Black's Law Dictionary 1079 (5th ed. 1979)). We have narrowly construed the privity requirement to require *direct* privity between the plaintiff and the attorney or entity to be held liable for legal malpractice. *McDonald, supra; Clark v. Ridgeway,* 323 Ark. 378, 914 S.W.2d 745 (1996). In *Clark,* we stated that "the language of this section [16-22-310(a)] is precise and clear and reveals that the contract contemplated by the statute relates to a contract for professional services performed by the attorney for the client." *Clark,* 323 Ark. at 386.

Here, the trial court granted Appellees's motion for summary judgment on the grounds that no privity existed between the Trusts and the Firm, the estate of attorney Krug, and attorneys Berkowitz and Miller. According to the Trusts, these claims fall

within two distinct periods of representation by the Appellees: the legal malpractice alleged against attorney Krug concerning the land sale transaction; and, the legal malpractice and fraud alleged against attorneys Berkowitz and Miller concerning the Trusts's pursuit of the foreclosure action after default on the $900,000 promissory note.

The Trusts contend that Appellees failed to meet their burden and failed to show a prima facie entitlement to summary judgment as to all counts on the issue of privity. *Jackson, supra.* They argue that Appellees admitted in its answer to the complaint that privity existed. The Eighth Circuit Court of Appeals has held that "admissions contained within an answer are binding and conclusive," even if the admitting party "later produced evidence contrary" to his answer. *Missouri Housing Development Commission v. Brice,* 919 F.2d 1306 (8th Cir. 1990).

The Trusts argue as to the first period of representation by attorney Krug, that the Appellees offered nothing in the affidavits of attorneys Berkowitz and Miller to support the assertion that the Trusts lacked privity with the Firm and Krug. The Trusts point to Appellees's paragraph three of their answer:

> They deny that many of the acts alleged in the complaint ever occurred, but admit that legal representations was provided by Wayne Krug, Stephen Miller, and Angela Berkowitz to plaintiffs at certain times in Washington County, Arkansas. They deny the remaining allegations of paragraph 3 of plaintiffs' complaint.

However, Paragraph 3 referred only to the location of Appellees's acts, and they made no averment in that paragraph regarding the representation of the Trusts. Appellees admitted only that the acts alleged took place in Washington County, Arkansas, and no other admission can be deduced from that answer.

Here, the Appellees were in privity of contract with Henry, Irene, Darlene, and Raymond in their individual capacities, not the Trusts. Henry, Irene, Darlene, and Raymond, individually, owned the land at issue and, as individuals, entered into an oral contract for legal representation regarding the sale of the land. The mortgages and promissory notes regarding the sale were in the names of "Henry Giles and Darlene Rush" in their individual capacities. Further, the money received from the sale was paid to the individuals, not the Trusts. There was no corre-

spondence presented to the trial court relating to the sale of the land in which Appellees addressed the Trusts. Therefore, the Trusts are without standing to bring suit, and the trial court was without jurisdiction to hear the case.

In *Calandro v. Parkerson*, 327 Ark. 131, 936 S.W.2d 755 (1997), this court affirmed a grant of summary judgment where the plaintiffs, who came to the attorney for the purpose of establishing a corporation, failed to show whether the attorney's services in securing real property were made to them as individuals or to the corporation. Here, Henry, Irene, Darlene, and Raymond, as individuals, solicited the representation of the Firm for assistance with the sale of their Property, and the mortgage agreement made clear that the sale was effected by the individuals, not the Trusts. *Calandro* makes clear that, although Henry, Irene, Darlene, and Raymond are, in fact, the same individuals, they are different legal entities from the Trusts, and thus privity for the individuals does not necessarily equate to privity for the Trusts.

In the alternative, the Trusts argue that they are not required to have privity with the Firm because they fall under the second exception in § 16-22-310(a)(2), which provides for an exception to the general rule of privity when: the attorney was aware that the professional services were to benefit the person bringing the action; and, the attorney identified the third party in writing to the client and sends a copy of the writing or similar document to the third party.

The exception on which the Trusts rely is inapplicable. Given that the Trusts had no potential action against Krug, because they never had privity of contract with him, their claims that Berkowitz's acts in 2001 and 2002 affected the 1999 claim by a non-Trust party fail. It is undisputed that Krug was aware that the purpose of his relationship with Henry, Irene, Darlene, and Raymond, the individuals, was to benefit the Trusts. Thus, the only question that remains is whether the necessary correspondence was sent.

In *McDonald v. Pettus, supra,* the appellants argued that a codicil to a will qualified as a "writing to the client" that identified the persons who are intended to rely on the services. This court refused to apply the exception, holding that "there is no evidence in the record that Mr. Pettus even sent the codicil to the children." *McDonald*, 337 Ark. at 275. Here, the Trusts did not

present any specific evidence, such as specific documents or correspondence, that would show that the statute requirements had been met.

The Trusts also argue that, as to the second period of representation, the Berkowitz and Miller Representation, that Berkowitz admitted in her summary judgment affidavit that she represented the Trusts beginning in November of 2001. The Trusts point to paragraph 31 of their complaint where they stated that they "sought the advice and counsel" of the Firm after Valley View defaulted on its obligations. Appellees's answer stated:

> They admit that Angela Berkowitz and Stephen Miller were retained to pursue a foreclosure action regarding the failure to pay the mortgage and/or note referenced above [the Valley View default]. They admit that Wayne Krug was not practicing law at that time. They deny the remaining allegations of paragraph 21 of plaintiffs' complaint.

Accordingly, the Trusts argue that Appellees failed to meet their burden to show a prima facie entitlement to summary judgment because the pleadings, the answer of Appellees, the evidence presented to the trial court, and Berkowitz's affidavit all demonstrate, and indeed admit, the existence of privity between the parties.

However, the existence of privity for the Berkowitz and Miller claims cannot stand on its own. The only damage the Trusts suffered as a result of the claimed actions was the loss of any potential legal malpractice claim. These claims are arguments for tolling the statute of limitations and are not separate claims. They were pled as grounds for avoiding any statute of limitations problems, but cannot suffice as causes of actions on their own. The actual, tenable claims of legal malpractice are during the Krug representation when the Trusts had no privity with the Firm.

Finally, the Trusts argue that the trial court erred by not allowing the Trusts "to amend their complaint to add Irene Giles, Darlene Rush, and Raymond Rush as plaintiffs in their individual capacities." Rule 15(a) states:

> (a) Amendments. With the exception of pleading the defenses mentioned in Rule 12(h)(1), a party may amend his pleadings at any time without leave of the court. Where, however, upon motion of

an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 20 days after service of the amended pleading, whichever period is longer, unless the court otherwise orders.

Further 17(a) provides:

(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian (conservator), bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or the State or any officer thereof or any person authorized by statute to do so may sue in his own name without joining with him the party for whose benefit the action is being brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The Trusts never filed a second amended complaint, and cannot now raise this argument on appeal. Because we have determined that no privity of contract existed between the Trusts and the Appellees, we do not address the remaining points raised on appeal.

Affirmed.