FARMERS COOPERATIVE ASSOCIATION, INC. OF ROGERS, ARKANSAS *v.* HUGH H. WEBB, JR. ET UX

5-5322                                    459 S. W. 2d 815

Opinion delivered October 26, 1970
[Rehearing denied December 14, 1970.]

*Crouch, Blair, Cypert & Waters,* for appellant.

*Little & Lawrence,* for appellees.

J. FRED JONES, Justice. This is an appeal by Farmers Cooperative Association, Inc. from a judgment of the Benton County Circuit Court quashing an execution and levy on 61 acres of farm land toward the satisfaction of a judgment on a note, in the amount of $8,008.58, plus accrued interest, previously rendered in circuit court in favor of Farmers against Hugh H. Webb, Jr. and Dortha Lea Webb, his wife.

The appellee, Hugh H. Webb, Jr., is one of three surviving children and heirs of Hugh Webb, who died testate on July 30, 1965. The will of Hugh Webb, Sr. was dated January 10, 1949. It was prepared by himself without the benefit of counsel and provided as follows:

"It is my will and I hereby direct my Executrix herein after named to first pay all my just and legal debts, if any.

I hereby will devise and bequeath unto my loving wife, Nell I. Webb, all of my property, both real and personal, of whatsoever kind and nature, and wheresoever situated.

I hereby appoint my wife, Nell I. Webb, as sole Executrix of this my last will and testment [sic]. And it is my request that she be not required to execute any bond as such Executrix."

The will was offered for probate in the Benton County Probate Court and Mrs. Nell I. Webb was appointed executrix on November 22, 1965; and on April 5, 1966, Hugh Webb, Jr. signed a waiver of notice as follows:

"I, Hugh Webb, Jr., being one of the heirs at law

of Hugh H. Webb, deceased, do hereby waive notice of all hearings, pleadings, appraisement, inventory, accounting, and other matters involved in the administration of the estate of Hugh H. Webb, deceased, and consent to the holding of any such hearing or the entering of any orders without further notice to me."

The other two children and heirs of Hugh Webb, Sr. signed similar waivers.

An order approving first and final accounting, final distribution and discharge was entered by the probate court on March 16, 1967, and after reciting the publication of notices and expiration of time for filing claims, and after reciting that the estate had been fully administered, the order recites as follows:

"Petitioner has on hand the following assets of the estate, which, according to the will of the decedent, should be and become the property of Nell I. Webb, to-wit:" (Here follows a description of property, including the 61 acres here involved).

The order then concluded as follows:

"IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the final accounting filed herein by Nell I. Webb, as executrix of the estate of Hugh H. Webb, deceased, be and hereby is approved; that said executrix be and hereby is authorized and directed to deliver and distribute to Nell I. Webb the assets of the estate as provided by the decedent's will, that Little & Enfield are hereby allowed an attorney's fee of $1,440.00; and that upon making such distribution of assets and filing her receipts herein said executrix shall be fully and finally released and discharged from her trust herein and the administration of the estate shall be closed."

By probate court order dated March 30, 1967, the estate was closed and Mrs. Webb was discharged.

On May 27, 1968, the appellant, Farmers Cooperative Association, Inc., filed its complaint in the circuit court of Benton County against Hugh H. Webb Jr. and Dortha Lea Webb, his wife, alleging that on January 28, 1966, they executed and delivered to Farmers their promissory note in the amount of $38,360 payable on or before August 27, 1966, with interest from the maturity date at 10% per annum. The complaint alleged that the note was past due and that there remained an unpaid balance of $8,008.58, plus accrued interest and the complaint prayed judgment for that amount. Default judgment was entered on January 6, 1969, for the amount sued for and execution was issued on February 26, 1969. This execution was returned by the sheriff on March 19, 1969, with the notation "nothing to levy on at this time." On March 27, 1969, another execution was issued and this execution was levied on the 61 acre farm described in the will of Hugh H. Webb, Sr.

On May 19, 1969, Mrs. Nell I. Webb and two of her children, Mabel McKinney and Eula Mae Walker, as well as Webb's Feed and Seed Store, Inc., filed a motion in the Benton County Circuit Court setting out the above facts pertaining to the probation of the will and praying that the execution be quashed for the reason that title to the property was properly vested in Nell I. Webb in the probate proceedings.

The trial court found that Hugh Webb died testate and that there had been no waiver in the probate proceedings by Hugh Webb, Jr. in an attempt to defraud his creditors; that the probate proceedings had all the appearances of a friendly type situation in which there was no anticipation of any possible after effects, and that the circuit court was obligated to respect the judgment of the probate court. The trial court found that the motion to quash was a collateral attack on the judgment of the Benton County Probate Court, and that the movants were without standing to attack the judgment of the probate court. The court further found that all parties in interest executed waivers of notice and that there was a final order of the probate court wherein

title to the real estate in question was vested in Nell I. Webb on the 16th day of March, 1967. The circuit court found that it was without power to review or pronounce erroneous the judgment of the probate court, the two courts being separate courts with competent and equal jurisdiction. The trial court entered judgment quashing the execution without prejudice.

On appeal to this court Farmers Cooperative Association, Inc. rely on the following point for reversal:

"The trial court erred in quashing the execution and levy thereon for the reason that the judgment debtor owned an interest in the real property against which the execution and levy were directed."

The question presented on this appeal is whether a judgment creditor of a surviving child and heir at law may levy execution on the interest of such heir in lands of his deceased's parent, when the property levied upon was willed to the widow of the decedent, and the heir was a pretermitted child under the will.

Ark. Stat. Ann. § 60-507 (b) (Supp. 1969) is as follows:

"If at the time of the execution of a will there be a living child of the testator, or living child or issue of a deceased child of the testator, whom the testator shall omit to mention or provide for, either specifically or as a member of a class, *the testator shall be deemed to have died intestate with respect to such child* or issue, and such child or issue shall be entitled to recover from the devisees in proportion to the amounts of their respective shares, that portion of the estate which he or they would have inherited had there been no will." (Emphasis supplied).

At the hearing on the motion to quash, Hugh Webb, Jr. testified that he received the waiver, supra, together with a letter from the attorney representing the

estate. He testified that at the time he signed the waiver he knew he was waiving his right to contest the will; that he knew he could contest the will if he desired to do so, but that he knew of no grounds on which the will could be contested. He testified that as far as he was concerned the will was valid; that it left everything to his mother and that was the way he wanted it. He says that he thought that was the purpose of signing the waiver.

"Q. What did you understand were your grounds to contest the will?

A. I didn't know what grounds. I just knew that if I wanted to contest it I could.

Q. You could contest it, but you didn't have any idea you could overturn the provisions of the will?

A. I didn't want to.

Q. You didn't have any idea that you could, or know of any reason why you could?

A. I don't suppose I did."

Mr. Webb testified that he knew what property was involved and that it was in his father's name at the time of his father's death; and that his father left the property and everything else to his mother by the will.

"Q. Did you know that when he died—or even think that you had any interest in this property?

A. No.

Q. When you signed the waiver did you intend to give your mother this piece of property?

A. I did.

Q. Did you know that you had anything to give her at that time?

A. No.

\* \* \*

Q. All right, sir, let me ask you this. Did anyone ever tell you that during the probate of this will or at anytime thereafter because you were not named in the will you might have an interest in this—in the estate of your father—you might have an interest in this property?

A. No.

Q. No one ever told you this? When is the first time you knew this.

A. I don't know.

\* \* \*

Q. Let me ask you, when was the first time you knew that there was a problem caused by the fact that your father had not named you in the will?

A. I don't know whether I understand it yet or not. I guess whenever the papers were served.

Q. All right, sir. And so it is true that no one, at any time, ever came in and said, Hugh, you are not named in this will, and because you are not named in this will you may have some interest in the estate? No one ever told you this?

A. Nobody ever told me that, no.

Q. All right, sir. And it is true, is it not, Mr.

Webb, that you and the other members of your family did not at any point ever get together and say, Now listen, we all realize we have an interest in this estate, let's give it to mother? Nobody ever said that, did they?

A. No."

We are of the opinion that the trial court erred in quashing the execution. As early as 1861 this court held that a will wherein a living child is pretermitted does not void the will, but in so far as regards such child the testator shall be deemed to have died intestate and such child shall be entitled to such proportion, share or dividend of the estate, real and personal, of the testator, as if he had died intestate, and such child shall be entitled to recover from the devisees and legatees in proportion to the amount of their respective shares. *Branton v. Branton*, 23 Ark. 569.

In 1876 in the case of *Trotter* v. *Trotter*, 31 Ark. 145, Benjamin Y. Trotter willed 160 acres of land to his wife, Ellen, and her children; the said Ellen to have a life estate in the property or until death or remarriage. Mrs. Trotter was given the entire control and management of the estate and she was directed to keep it intact and manage it as it had been managed in the past. The will failed to mention Trotter's children by a previous marriage. Mrs. Trotter renounced the will and took under the statute. The pretermitted children by the previous marriage filed suit for partition of the properties and Mrs. Trotter demurred to the complaint claiming her homestead rights in the property. After approving the widow's rights to homestead under her renouncement of the provisions of the will, this court said:

"The plaintiffs propose by their bill to lay hold of this land and divide it among themselves—those who are not named in the will, as well as those who are.

They do not renounce the will, but take under it. Not having been named or provided for in the will,

their rights are protected by treating them as heirs. The 12th section Gould's Digest, 1075, provides that the children not named shall be entitled to recover from the devisees and legatees in proportion to the amount of their respective shares.

All that these plaintiffs have a right to is, that they shall have an equal share of the estate with the children named in the will; the will is not broken, but they are let in upon equal terms as beneficiaries."

In *Rowe v. Allison*, 87 Ark. 206, 112 S. W. 395, Martha Allison died testate in Sebastian County and at the time of her death and at the time she made her will, her son, Samuel M. Allison, had predeceased her and left surviving George C. Allison and his sister Laura Allison, as minor children and only heirs of Samuel M. Allison. The will of Martha Allison directed that certain lands be sold by her administrator and the lands were sold under the will to different individuals who in turn sold to the Cherokee Construction Company. George C. Allison nor his sister were named in the will. George C. Allison brought suit against the administrator, R. A. Rowe, and the Cherokee Construction Company alleging that Martha Allison died seized and possessed of the described lands; that he is an owner of a one-tenth interest therein by inheritance from Sanuel M. Allison, who was the son of Martha Allison and who died intestate prior to her death; that by reason thereof, Martha Allison had died intestate as to the plaintiff, and that he was entitled to the share of the estate which he would have received had she died wholly intestate. He prayed that the deeds from Rowe, administrator, and from his grantees to the Cherokee Construction Company and all other deeds whereby it was sought to convey his undivided one-tenth interest in the lands be declared void in so far as they affect his title.

Demurrers to the complaint were overruled and judgment was entered in favor of Allison for reconveyance of a undivided one-tenth interest, for the posses-

sion of which a writ of possession was awarded. This court on appeal considered the sufficiency of the complaint as if brought at law and stated:

"The rights of the omitted child could not be divested by the sale of the estate under the will, for the will was as to him inoperative. Had the property been sold under orders of the probate court for the purpose of paying debts or any other purpose over which the probate court would have jurisdiction, then different questions would be presented. But the only titles which the defendants have were obtained through a sale under the power of sale in the will.

It is insisted that the statute which renders the will inoperative gives a remedy against devisees and legatees. This is true, but it does not follow that it is the only remedy. It does not exclude an omitted child or grandchild from recovering land from purchaser of those devisees or legatees or from purchasers under the power of sale contained in the will. The statute makes the will absolutely inoperative as to such omitted child, and provides that he shall be entitled to such share and portion of the estate as if the ancestor had died intestate. It provides further that he shall be entitled to recover of the devisees and legatees in proportion to the amount of their respective shares, and vests the probate court with power to decree such distribution; and provides further that a writ of *scire facias* shall issue against the devisees or legatees in case they refuse to pay. Sections 8020, 8021, Kirby's Digest. But there is nothing in the statute to indicate that it was intended to remit the child solely to this action in the probate court against the devisees or legatees; and such a construction would enable devisees and legatees to defeat the whole purpose of the statute. The object of the statute is to give such omitted child such share as he would have received, had there been no will. And these provisions for relief against devisees and legatees are merely to enable the probate court, which would not otherwise

have jurisdiction, to make the distribution and enforce the same. The share of the child is absolute, and such share cannot be defeated by being conveyed away, either under a power of sale in the will or by the devisees or legatees."

In *Yeates* v. *Yeates*, 179 Ark. 543, 16 S. W. 2d 996, in referring to § 60-507 (b), supra, this court said:

"The statute above quoted expressly provides that, when a person makes a will and omits to mention the name of a child, every such person, as regards such child, will be deemed to have died intestate, and such child will be entitled to such portion, etc. And if a person die intestate, children inherit equally. Section 3471, Crawford & Moses' Digest. They inherit the property, however, subject to the payment of deceased's debts and subject to the widow's dower.

A person can dispose of his property by will to persons other than his children or relatives. He may disinherit all of his children, but, in order to do so under our statute, he must name the children, and, independent of the statute, it must be clear from his will that he intended to disinherit them."

We conclude that the trial court erred in quashing the execution. The title to real property vests immediately upon the death of the owner. If the owner dies testate the title vests in his devisees subject to provisions of the probate court for handling the assets of an estate. Of course, a widow has homestead and dower rights under the law and may renounce her rights under a will in favor of her constitutional and statutory rights. Ark. Stat. Ann. § 61-218 (1947). If the owner dies intestate, however, the title to his real property vests immediately in his heirs subject to appropriate provisions for administration under the code and subject to widow's dower and homestead rights, if any. *Dean* v. *Brown*, 216 Ark. 761, 227 S. W. 2d 623. A child does not have the right to renounce the provisions of a will and take under

the law. The child of a testator simply must take under the will of the testator when named in the will and such child takes under the law when not named in the will. Even when a widow renounces a will and takes under the law she must do so in writing. Ark. Stat. Ann. § 60-504 (Supp. 1969).

Ark. Stat. Ann. § 61-101 (1947) provides as follows:

"When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, *and shall be intestate as to such estate,* it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower in the following manner:

First: To children, or their descendants, in equal parts. * * *"

Thus, by the plain words of the statutes, the testator, Hugh Webb, is deemed to have died intestate as to Hugh Webb, Jr. under § 60-507 (b), supra. When Hugh Webb died intestate as to Hugh Webb, Jr. and his two sisters, the estate descended to them in equal parts, subject to the payment of debts and constitutional and statutory rights of the widow under § 61-101, supra.

Hugh Webb, Jr. only waived his right to notice in connection with the probation of the will. The probate court had the power to decree a distribution of the estate to the heirs under the law (*Rowe v. Allison, supra*), but it had no power to vest title in Mrs. Webb in the probation of the will because Hugh Webb died intestate as to his children, and the will was a nullity as to their legal rights in his property. We disagree with the trial court's finding that the probate court did vest title to the property in Mrs. Webb. As we read the record in this case, the probate court did not attempt to *vest title* in Mrs. Webb. The probate court simply found that Mrs. Webb had on hand assets which *according to*

*the will should become the property of Nell I. Webb.*
The court then only authorized Mrs. Webb as executrix
to *deliver* and *distribute* the assets to herself as provided
by the decedent's will. The title to the property vested
by operation of law and not by the will of the testator
or by probate court order. The probate court order by
its own terms fell far short of vesting title at all. The
property delivered and distributed by Mrs. Webb, under
the probate court order, only changed the possession
from her as executrix where it was subject to claims for
the decedent's debts, to her as the widow of Hugh Webb,
free of claims against his estate. The order did not affect
the title at all. Title to the property was not in issue
in the probate proceedings and the title remained where
the will and the statute left it and where it must remain
until alienated or conveyed in proper manner and form.
Ark. Stat. Ann. § 38-101 (Repl. 1962) and § 50-401
(1947).

The judgment is reversed.