James W. LYNN *v.* WAL-MART STORES, INC.

CA 07-384                                    280 S.W.3d 574

Court of Appeals of Arkansas
Opinion delivered March 19, 2008

*Youtz & Valdez, P.C.*, by: *Shane Youtz*; and *McHenry, McHenry & Taylor,* by: *Robert McHenry* and *Greg Taylor,* for appellant.

*Friday, Eldredge & Clark, LLP,* by: *Elizabeth Robben Murray* and *H. Wayne Young, Jr.*

L ARRY D. VAUGHT, Judge. James Lynn has appealed from a summary judgment for his former employer, appellee Wal-Mart Stores, Inc. On appeal, Lynn argues that he was fired for reporting inhumane workplace conditions in some foreign manufacturing facilities from which Wal-Mart buys goods, violating the public policy of this state, and that his termination breached a written employment contract for a specific term of three years. We find no error in the circuit court's entry of summary judgment to Wal-Mart, and we affirm.

Lynn began working for Wal-Mart in 1993. In January 2002, he signed the following "Global Assignment Letter" in contemplation of his transfer to Costa Rica as a Global Services manager:

> This Global Assignment Letter confirms our mutual understanding of the terms and conditions applying to your global assignment with Wal-Mart Stores Inc. or one of its affiliates.
>
> The intent of this letter is to provide a statement of salary and benefits effected by your acceptance of this Global Assignment. Please refer to the Global Assignment Policy Manual for a detailed description of each of these terms as well as other important information related to your assignment. The content of this letter represents your compensation at the beginning of your assignment; the terms of this letter may change throughout the assignment based on salary increases, adjustments to the allowance tables, change of family status, overall policy changes or other individual circumstances as described in the Global Assignment Policy Manual.
>
> . . . .
>
> | | |
> |---|---|
> | Date of letter: | 12/20/2001 |
> | Position: | Global Services Manager |
> | Home Country: | US |
> | Host Country: | Costa Rica |
> | International Effective Date: | January 12, 2001 |
> | Type of assignment: | Expatriate |
> | Anticipated duration of assignment: | 3 years |
> | Tax origin/relocated from: | Arkansas |
>
> . . . .
>
> It is understood that this letter is not to be construed as an employment agreement nor a contract for employment and that each of these terms is described in detail in the Wal-Mart Global Assignment Policy Manual.

Lynn moved to Costa Rica in February 2002. By early March, other Wal-Mart employees and his immediate supervisor, Odair Violim, began complaining about his work performance. Lynn was counseled about these problems in mid-March. By April 2, 2002, however, his superiors decided that he should be terminated "right away."

While based in Costa Rica, Lynn accompanied an inspector in mid to late April 2002 as he evaluated working conditions at some manufacturing facilities that did business with Wal-Mart. According to Lynn, he observed, and then reported to Wal-Mart executives, inhumane working conditions at the factories.

Also in April 2002, Wal-Mart opened an investigation of whether Lynn had an inappropriate relationship with a subordinate. On April 21, 2002, Lynn and this woman traveled to Guatemala on business. A "Wal-Mart Loss Prevention Associate," Juan Valverde, also traveled to Guatemala to watch them and checked into the same hotel. Valverde reported that, late on the night of April 24, he saw Lynn enter the woman's room, heard sounds that he believed were indicative of sexual contact, and saw Lynn leave her room with messy hair and with his shirt out of his pants. In his report to Wal-Mart, Valverde described what he observed in detail.

On May 6, Violim separately interviewed Lynn and the woman. She admitted that she and Lynn had an inappropriate relationship, which she described as going "further . . . than a friendship" and "a big mistake." Although Lynn at first denied an inappropriate relationship, after he was informed that Wal-Mart had evidence of one, he admitted kissing her. Lynn and the woman then signed written statements acknowledging a romantic relationship. On May 7, 2002, Wal-Mart terminated Lynn for violating the company's fraternization policy, which provided that it was against company policy for a supervisor to become romantically involved with an employee he supervised and that employees who did so would be subject to immediate termination.

Lynn filed his complaint in the Benton County Circuit Court on June 17, 2005, alleging several causes of action that included wrongful discharge and breach of contract. He alleged that his termination for violating the company's fraternization policy was a pretext and that he had actually been fired because he had reported the factory-certification program's failure to Wal-Mart. He asserted that he had reported inhumane working conditions in the factories and that Wal-Mart employees were being pressured by Wal-Mart executives to alter factory-certification results. Lynn alleged that he had discovered that Wal-Mart's factory-certification process was designed only to create the impression that Wal-Mart bought goods produced under humane working conditions which, in fact, were terrible and which violated Wal-Mart's internal rules and regulations.

Lynn contended that, in October 2003, Wal-Mart made the following misrepresentation in its 2002 annual report on supplier standards:

> Wal-Mart strives to do business only with factories run legally and ethically. We continue to commit extensive resources to making the Wal-Mart system one of the very best. We require suppliers to ensure that every factory conforms to local workplace laws and there is no illegal child or forced labor. Wal-Mart also works with several different outside monitoring firms to randomly inspect thousands of these factories each year to ensure compliance. In fact, we conduct more than 300 factory inspections each week as part of our commitment. In short, we have no desire to do business with any factory being run illegally or unethically, and we feel that our program is helping to improve working conditions and create economic opportunity for workers around the world.

Lynn stated that he was terminated in violation of Arkansas's public policy against falsifying business records and protecting the consumer from the deceptive trade practice of making a false representation concerning the source or certification of goods. He also alleged that his Global Assignment Letter was an enforceable contract, which his termination breached.

Wal-Mart moved for summary judgment on the grounds that Lynn's allegations did not constitute a violation of Arkansas's public policy and that he did not have an enforceable employment contract. Along with the motion, Wal-Mart attached excerpts from the depositions of Lynn and several Wal-Mart executives, an executive's affidavit, and the statements of Lynn, his subordinate, and Valverde. In his deposition, Lynn admitted that he had violated Wal-Mart's fraternization policy. As exhibits to his response, Lynn filed copies of some factory-monitoring reports; emails among Wal-Mart executives prior to his termination; excerpts from several depositions; and Wal-Mart's 2002 annual report on supplier standards.

The circuit court entered summary judgment for Wal-Mart, holding that, as a matter of law, even if Lynn's allegations were true, he was not terminated in violation of the public policy of Arkansas:

> 6. Lynn alleges his termination violated the public policy articulated in the Arkansas Deceptive Trade Practices Act. Ark.

Code Ann. § 4-88-107. The Arkansas Deceptive Trade Practices Act, however, is not implicated by Lynn's allegations. There is no evidence of a misrepresentation of the quality of Wal-Mart's goods or a misrepresentation in the advertisement of the goods Wal-Mart sells. There is no evidence of any damage or injury to a consumer who has purchased Wal-Mart goods. The Annual Report on Wal-Mart's Factory Certification Program does not implicate the Arkansas Deceptive Trade Practices Act.

7. There is no evidence that there are any material misrepresentations in the Annual Report on Wal-Mart's Factory Certification Program. The Report conveys the philosophy to Wal-Mart stockholders of what Wal-Mart is trying to do to improve working conditions in foreign factories and that Wal-Mart does not want to do business with factories that do not comply with a certain standard of working conditions. The Report describes Wal-Mart's policy of inspecting factories for compliance with Wal-Mart's standards. If a violation is found, the violation is noted and the factory is given a chance to improve. If the factory does not improve to Wal-Mart's satisfaction, Wal-Mart ceases doing business with that factory. The Report does not state that Wal-Mart will cease doing business with a factory forever if a violation is discovered but does state that Wal-Mart has ceased doing business with a certain number of factories for violations of certification standards.

The circuit court also granted summary judgment to Wal-Mart on Lynn's breach-of-contract claim because, as a matter of law, the Global Assignment Letter was not an employment contract. The court ruled that the letter did not alter Lynn's at-will status; that it did not provide for employment for a specific period of time; and that it did not state that Lynn could be terminated only for cause. The court also held that, even if the letter was a contract, there was no evidence that Wal-Mart breached it, because Lynn had admitted that he had violated Wal-Mart's fraternization policy. The court dismissed Lynn's complaint in its entirety, leaving Wal-Mart's counterclaim against Lynn for breach of contract. The court entered a certification for an interlocutory appeal under Ark. R. Civ. P. 54(b). Lynn then brought this appeal.

Summary judgment should be granted only when it is clear that there are no disputed issues of material fact. *Holliman v. Liles*, 72 Ark. App. 169, 35 S.W.3d 369 (2000) (treating a dismissal as a summary judgment). All evidence must be viewed in the light most favorable to the party resisting the motion; he is also entitled

to have all doubts and inferences resolved in his favor. *Id.* Summary judgment is inappropriate when facts remain in dispute or when undisputed facts may lead to differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Id.* When the evidence leaves room for a reasonable difference of opinion, summary judgment is not appropriate. *Id.* The object of summary-judgment proceedings is not to try the issues but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Id.* Summary judgment can be entered in appropriate circumstances in the context of a wrongful-termination case. *Hice v. City of Fort Smith*, 75 Ark. App. 410, 58 S.W.3d 870 (2001).

In Arkansas, an employer may fire an employee for good cause, bad cause, or no reason at all under the employment-at-will doctrine. *Magic Touch Corp. v. Hicks*, 99 Ark. App. 334, 260 S.W.3d 322 (2007). While a contract for an indefinite term is terminable at will, a contract for a definite term may not be terminated before the end of the term, except for cause or by mutual agreement, unless the right to do so is reserved in the contract. *Id.* There are two other exceptions to the at-will doctrine: (1) where an employee relies upon a personnel manual that contains an express agreement against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term. *Id.*

We will first address Lynn's breach-of-contract argument. Lynn contends that the Global Assignment Letter was a contract for a definite period of time, three years, and was, therefore an exception to the at-will doctrine. He alleges that he established an issue of fact as to whether Wal-Mart breached that contract by firing him without cause. We disagree. It is readily apparent to us that the Global Assignment Letter was unambiguous and that it cannot reasonably be construed as promising to employ Lynn for the next three years. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Magic Touch Corp. v. Hicks*, 99 Ark. App. at 339, 260 S.W.3d at 326. The letter met neither requirement but simply set forth the location and other conditions of Lynn's employment, as an at-will employee, for the next three years. In fact, the letter expressly stated that it was *not* a contract of employment.

In any event, even if the Global Assignment Letter *was* a contract, Lynn clearly provided good cause for his termination by admittedly violating the fraternization policy. We therefore affirm on Lynn's breach-of-contract argument.

The next question is whether Lynn's termination fell within the public-policy exception to the at-will doctrine. A public-policy-discharge action is predicated on the breach of an implied provision that an employer will not discharge an employee for an act done in the public interest. *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380 (1988). The public policy of the state is contravened if an employer discharges an employee for reporting a violation of state or federal law. *Id.* This exception is limited and is not designed to protect private or proprietary interests. *Id.*

Lynn argues that Wal-Mart violated Arkansas's public policy, as set forth in the Arkansas Deceptive Trade Practices Act, by firing him for his reports to Wal-Mart about problems with the factory-certification process. According to Lynn, the 2002 annual report on supplier standards contained deceptive representations about working conditions in the factories where Wal-Mart goods were produced. He specifically refers to Wal-Mart's representations that it would not accept products from suppliers that use forced labor, that discriminate on the basis of gender, or that fail to provide a safe, clean, and healthy environment for their employees.

Wal-Mart's purported failure to follow its private, internal policies or the labor laws of foreign countries does not implicate the public policy of this state. A well-established public policy of the State must be found in our statutes or in our constitution. *Sterling Drug, Inc. v. Oxford, supra; Hice v. City of Fort Smith, supra.* The statute that Lynn cites as embodying the public policy of Arkansas is Ark. Code Ann. § 4-88-107(a)(1) (Supp. 2007), which states:

> (a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following:
>
> (1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model . . . .

■ We cannot interpret this statute as applying to Wal-Mart's statements in its annual report about its factory-certification process, even if we accept Lynn's factual allegations as true. Lynn has simply shown no nexus between his reports of problems with the factory-certification process and any public policy of this state. Even if we were to hold that Lynn's allegations did implicate public policy — which we do not — his admitted violation of Wal-Mart's fraternization policy provided independent, sufficient grounds for his termination.

Affirmed.

GLADWIN and GLOVER, JJ., agree.