2009 Ark. App. 621

Gary HOWARD, Individually and as the Administrator of the Estate of Odis Howard, Deceased, Appellant,

v.

Lauren ADAMS, Don Brady, Todd Mazzanti, and Adams & Brady & Jackson, P.L.L.C., Appellees.

No. CA 08–1190.

Court of Appeals of Arkansas.

Sept. 30, 2009.

Harry McDermott, Fayetteville, for appellants.

Friday, Eldredge & Clark, LLP, by: Clifford W. Plunkett and C. Aaron Holt, Fayetteville, for appellees.

JOSEPHINE LINKER HART, Judge.

Gary Howard, acting individually and as the administrator of his late father's estate, sued attorney Lauren Adams and her law partners for breach of contract, legal malpractice, and fraud. Adams moved for summary judgment, which the trial court granted on all counts other than Gary's individual fraud claim. Gary appeals and argues that summary judgment was inappropriate because genuine issues of material fact remain to be decided. He also argues that the trial court erred in reducing a fee request by the estate's attorney. We agree that fact questions preclude the entry of summary judgment. We therefore reverse the partial-summary-judgment order. We also reverse the attorney-fee award for reconsideration in light of our disposition on appeal.

*Facts*

We view the facts in a light most favorable to Gary, as the party resisting the motion for summary judgment. *See Lynn v. Wal–Mart Stores, Inc.*, 102 Ark.App. 65, 280 S.W.3d 574 (2008). Gary is the only child of Odis Howard, who died on January 16, 2001. He is also the stepson of Odis's wife, Mabel. In the latter part of 1998, Odis and Mabel visited attorney Bill Watkins to obtain estate-planning services. Watkins drafted a revocable trust to hold all of Odis's and Mabel's property, and he drafted a deed transferring Odis's primary asset, a forty-six-acre tract of land, to the trust. The trust named Mabel as trustee and provided that, upon the death of the last settlor, the trust assets would be distributed to Gary. The trust also provided that either settlor could revoke or amend the trust.

Odis did not sign either the trust or the deed transferring his land. By June 2000, he was suffering from Alzheimer's disease and his family was concerned that he

lacked the capacity to care for himself or his affairs. Gary, Mabel, and Gary's daughter, Samantha, decided that Gary should be appointed as Odis's guardian. According to Gary, he hired Bill Watkins to petition the court for a temporary guardianship. Watkins did so, and the court appointed Gary as Odis's guardian for ninety days, beginning June 19, 2000.

In December 2000, approximately three months after the guardianship expired, Gary and his family believed that Odis's death was imminent. Gary, Mabel, and Samantha met with attorney Watkins, and, according to Gary, Watkins advised him to immediately sign the trust and the deed as Odis's guardian. Gary followed Watkins's advice and signed the documents. There is evidence that Watkins back-dated the documents to September 6, 2000, when Gary's guardianship was still in effect. During this meeting, Gary also agreed with Mabel and Samantha that the three of them would become co-trustees with equal authority. Watkins assured the family that he would amend the trust to reflect the co-trusteeship. Watkins did not tell Gary that, in the absence of the trust and deed, he stood to inherit Odis's property by intestate succession or through a will, subject only to Mabel's dower interest.[1] Watkins also did not advise Gary that his and Mabel's interests were in conflict with regard to Odis's property and that the trust document gave Mabel the unfettered discretion to revoke or amend the trust.

Following Odis's death on January 16, 2001, Watkins amended the trust to name Gary, Mabel, and Samantha as co-trustees. However, the amendment did not alter the provisions that gave Mabel the authority to revoke or amend the trust. In December 2001, Watkins drafted a second amendment, signed by Mabel, that purported to remove Gary as co-trustee, even though Watkins had previously agreed to amend the trust to grant equal authority to all co-trustees. A third amendment, drafted by Watkins and signed by Mabel in July 2002, unequivocally removed Gary as co-trustee. It also provided that, upon Mabel's death, Gary would receive approximately one-third of the trust assets, with the remainder going to Samantha. Thereafter, Mabel asserted that she owned the trust's real property, both individually and as trustee.

These events and a belief that he had been deprived of his inheritance prompted Gary to seek legal advice from appellee, attorney Lauren Adams. According to Gary, he and Adams entered into an oral contract that called for Adams to probate Odis's estate; to rectify the situation involving the trust's real property; and to collect her attorney fees from Watkins's malpractice carrier, with whom she had already spoken. Adams later presented Gary with a written contract for recovery of the real estate, reflecting a thirty-three-percent contingency fee of "all amounts recovered." Gary asserts that Adams told him that the sole purpose of the contract was "to show her fee to Bill Watkins' malpractice insurance carrier." According to Gary, he asked Adams to write the terms of their oral agreement on the back of the contract, and she did so. The handwritten notations on the back of the contract read as follows: "will see malpractice insurance to re-pay attny fees & loses (probate & taxes); Bill [Watkins] has $1m in coverage and CNA has been notified; if ins. is insufficient to cover cost of litigation we agree to pro-rata reduction of fees."

---

1. In fact, Odis's 1960 handwritten will was offered for probate several years later, having just been discovered. The will provided that the executor should liquidate Odis's property and use the proceeds for Gary's support and education.

Adams later described the handwriting as mere notes from a conversation.

In October 2003, Adams filed a petition to have Gary appointed as administrator of Odis's estate. She also filed a complaint against Mabel seeking to void the trust documents. The probate case languished, but on February 11, 2005, Adams successfully set aside the |₅deed that conveyed the forty-six acres to the trust. Adams subsequently asserted that the property then became an asset of Odis's estate. Gary inquired about the malpractice suit against Watkins, and Adams told Gary that he should seek other counsel on that cause of action. Gary made inquiries to several attorneys, but they informed him that the statute of limitations had expired on a malpractice case against Watkins.

In April 2005, Gary hired his third and current attorney, Harry McDermott. McDermott agreed to help Gary probate Odis's estate, and he terminated Adams's services with a demand that she relinquish any claim for fees. In response, Adams filed an attorney-fee lien in the probate proceeding, along with a notice of lis pendens and a fee claim against the estate for $613,333, purportedly one-third of the value of the land that Adams had removed from the trust. Gary, acting individually and as the administrator of Odis's estate (having been appointed in August 2005), countered with a suit against Adams for breach of contract, fraud, and legal malpractice. The gist of his claim was that Adams failed to file a timely malpractice suit against Watkins as she had agreed to do in order to fund the probate proceedings and the case against Mabel.

The circuit court held a hearing in October and December 2006 to determine the validity of Adams's attorney-fee lien. The court ruled that Adams's lien was correctly filed but that Gary could pursue his legal claims against Adams in a jury trial to determine the amount of any offset to which he might be entitled. The court also found that Adams's |₆handwriting on the back of the contingency-fee agreement may well have been part of her contract with Gary, which she failed to perform.

In October 2007, Adams filed two summary-judgment motions, one against Gary individually and the other against Gary as administrator of Odis's estate. She argued primarily that 1) her failure to file a malpractice suit against Watkins did not damage Gary individually because Gary had no case against Watkins, due to lack of contractual privity; 2) the estate had no claim against Watkins because the decedent, Odis Howard, suffered no harm from Watkins's actions prior to his death; and 3) she took no actions that harmed the estate, nor did she have a contract with the estate. Following a hearing, the circuit court granted Adams's motions for summary judgment on all counts, other than Gary's individual fraud claim. Gary now appeals the court's partial-summary-judgment order.[2]

### Standard of Review

Summary judgment should be granted only when it is clear that there are no disputed issues of material fact. *Lynn*, 102 Ark.App. 65, 280 S.W.3d 574. The object of a summary-judgment proceeding is not to try the issues but to determine if there are any issues to be tried. *Id.* If

2. Ordinarily, a partial-summary-judgment order is not a final, appealable order. *Parks v. Hillhaven Nursing Home*, 309 Ark. 106, 827 S.W.2d 148 (1992). However, the present case involves probate orders, all of which are immediately appealable, with certain exceptions not applicable here. Ark.Code Ann. § 28-1-116(a), (b) (Repl.2004); Ark. R.App. P.,Civ. 2(a)(12) (2009); *Taylor v. Hamilton*, 90 Ark.App. 235, 205 S.W.3d 149 (2005).

there is any doubt whatsoever, the motion should be denied. *Id.* In summary-judgment[7] cases, we view the evidence and all doubts and inferences therefrom in the light most favorable to the party resisting the motion. *See id.*

*Partial Summary Judgment on
Gary's Personal Claims*

Gary's personal claims against Adams stem from Adams's failure to pursue a legal-malpractice suit against Watkins. In order for Gary to prevail against Adams, he must prove a case within a case, that is, he must prove that he has a meritorious claim against Watkins. *See Nash v. Hendricks*, 369 Ark. 60, 250 S.W.3d 541 (2007). Adams argued below that Gary had no case against Watkins because Gary did not have privity of contract with Watkins. The circuit court agreed with Adams and made the following pertinent findings:

7. At the time that Mr. Watkins provided services to have Gary Howard appointed guardian of Odis Howard and have the Trust and deed executed, Mr. Watkins was providing legal services to Odis and Mabel Howard, not Gary Howard in his individual capacity. Any representation by Mr. Watkins to Gary Howard was done only in Gary Howard's capacity as representative of Odis Howard. Therefore, as a matter of law, Gary Howard did not have privity with Mr. Watkins.

8. In addition, Gary Howard is estopped from arguing that Mr. Watkins was his personal attorney. Gary Howard filed verified discovery responses and a verified petition in previous litigation before the Court wherein he took the position that Mr. Watkins was the attorney for Odis and Mabel Howard. The verified petition stated that he was "induced to sign [the Trust] *by the attorney for Mr. and Mrs. Howard* after the

attorney insisted it was necessary to save estate taxes." [Emphasis added.]

9. Since Gary Howard could not have prevailed in an action against Mr. Watkins due to lack of privity, summary judgment dismissing Gary Howard's individual claims [other than fraud] is proper due to lack of causation....

Gary argues that summary judgment was improper on the issue of privity because genuine issues of material fact remain to be decided. We agree.

Arkansas law requires a plaintiff to have direct privity of contract with an attorney before the attorney may be held liable for his acts, omissions, decisions, or other conduct in connection with the performance of professional services. *See* Ark.Code Ann. § 16–22–310(a) (Supp. 2009); *Jackson v. Ivory*, 353 Ark. 847, 120 S.W.3d 587 (2003); *Nielsen v. Berger-Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002); *McDonald v. Pettus*, 337 Ark. 265, 988 S.W.2d 9 (1999). Privity of contract is defined as "that connection or relationship which exists between two or more contracting parties." *Swink v. Ernst & Young*, 322 Ark. 417, 420, 908 S.W.2d 660, 662 (1995). The "contract" contemplated by section 16–22–310(a) relates to a contract for professional services performed by the attorney for the client. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). A plaintiff may not substitute an attorney-client-relationship requirement for the privity requirement. *Jackson*, 353 Ark. 847, 120 S.W.3d 587. There must be a contract for services. *See id.*

The affidavits, depositions, and testimony on file in this case reveal contradictory accounts of Gary's contractual relationship with Watkins. Watkins testified in his deposition that he was "never Gary's attorney" and that he represented "the family," which did not include Gary. Watkins also stated that Mabel and Samantha ap-

proached him about establishing a guardianship for Odis and that Mabel paid his fees. Adams's expert, attorney Jack Butt, testified in his deposition that Gary was not in privity with Watkins. However, Gary claimed that Watkins represented him in addition to representing Mabel and Samantha. Gary's guardianship petition, which he filed with the court in June 2000, bears the signature of "Bill Watkins, His Attorney." Gary's affidavit and his testimony from a prior hearing reflect that he "hired" Watkins to appoint him as Odis's guardian and that he later "sought the advice of my attorney, Bill Watkins concerning my rights to my father's estate." Gary stated that Watkins advised him to sign the trust and the transfer deed but did not advise him that, without the trust, he would inherit Odis's property. Gary also stated that Watkins assured him that he would implement a co-trustee agreement to give Gary, Mabel, and Samantha "equal say" over the real property.

The court also had before it the testimony of attorneys Tim Dudley and Richard Hatfield. Dudley testified that Watkins represented Gary as his attorney and that Watkins had an obligation to advise Gary of his inheritance rights and the possibility that Mabel could "cut him out" of the trust. Hatfield testified that Gary had privity of contract with Watkins but only as guardian of Odis's estate.

■ The record therefore demonstrates conflicting evidence on the question of privity. Summary judgment is inappropriate in cases where the proof conflicts on a material issue. *See Chlanda v. Killebrew,* 326 Ark. 791, 934 S.W.2d 227 (1996). Additionally, our supreme court has reversed a summary judgment in a similar situation involving conflicting testimony on the question of whether a legal-malpractice plaintiff was in privity with the defendant attorney. *Jackson,* 353 Ark. 847, 120 S.W.3d 587.

■ Adams cites *Great American Insurance Co. v. Dover & Dixon,* 402 F.Supp.2d 1012 (E.D.Ark.2005), *Giles v. Harrington, Miller, Neihouse, & Krug,* 362 Ark. 338, 208 S.W.3d 197 (2005), and *McDonald,* 337 Ark. 265, 988 S.W.2d 9, for the proposition that Gary lacked privity with Watkins. However, those cases are inapposite because the purported clients there produced no evidence that the attorney advised them on legal matters or contracted to provide them with legal services. By contrast, Gary offered proof that he hired Watkins, that Watkins advised him during the course of his representation, and that Watkins had an obligation to advise him further. We therefore conclude that summary judgment was inappropriate on the question of privity.

■ Adams proposes two alternative reasons why we should affirm the partial-summary-judgment order. She contends first that Gary's claim of contractual privity with Watkins is barred by the doctrine of judicial estoppel. Judicial estoppel prohibits a party from taking inconsistent positions in successive cases with the same adversary. *See Dupwe v. Wallace,* 355 Ark. 521, 140 S.W.3d 464 (2004). Adams points to Gary's 2003 complaint against Mabel in which he alleged that "the attorney for Mr. and Mrs. Howard" induced him to sign the trust documents. Adams also cites Gary's interrogatory response in that same case, stating that Mabel had first contacted Bill Watkins and paid for his services. Adams argues that these representations contradict Gary's current position that Watkins was his attorney.

■ The first topic we must address on the estoppel issue is procedural. Adams argues that the court's estoppel ruling constituted an independent, alterna-

tive basis for granting partial summary judgment and that Gary failed to attack the estoppel ruling in his opening brief on appeal. *See Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002); *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989) (holding that appellate courts will not reverse if an appellant fails to attack a trial court's independent, alternative basis for its ruling). It is true that Gary made only a brief mention of the estoppel ruling in his initial brief. However, there is no procedural bar. We read paragraphs seven through nine of the court's partial-summary-judgment order to say that the court "hung its hat" so to speak, on the privity ruling. While the court did state that Gary was estopped from claiming privity, we do not view that ruling as a separate and distinct ground for the court's decision. Rather, it was simply correlative to the court's ultimate ruling on privity.

On the merits of the estoppel issue, fact questions remain as to whether Gary's conduct met the elements of judicial estoppel. Judicial estoppel arises when 1) a party assumes a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case; 2) a party assumes the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; 3) a party successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and 4) the integrity of the judicial process of at least one court is impaired or injured by the inconsistent positions taken. *Dupwe*, 355 Ark. 521, 140 S.W.3d 464. Gary's previous statements that Watkins was Mabel and Odis's attorney are not necessarily inconsistent with his present claim that Watkins was his attorney. Watkins could have represented all three of them. Furthermore, questions remain as to whether the prior court relied on Gary's representations and whether Gary manipulated the judicial process or injured the integrity of the courts.

As a second alternative reason for affirmance, Adams argues that Gary was not damaged by any alleged failure on her part to timely sue Watkins for malpractice. Adams contends that Watkins's actions could not have harmed Gary until July 2002, when the third trust amendment removed Gary as a trust beneficiary. Therefore, she claims, the three-year statute of limitations had not expired when Gary fired her in April 2005. Adams also points out that Gary hired attorney Harry McDermott before the statute of limitations expired in July 2005, making McDermott's failure to file a malpractice claim against Watkins an "intervening cause." We decline to affirm on this basis. We initially point out that, in Arkansas, a malpractice cause of action against an attorney accrues when the negligent conduct occurs, not when the client sustains injury. *See Rice v. Ragsdale*, 104 Ark.App. 364, 292 S.W.3d 856 (2009). Moreover, part of Gary's assertion of malpractice against Watkins involves Watkins's failure to properly advise him in December 2000. It is arguable that Gary's cause of action against Watkins arose in December 2000 and expired in December 2003, while Adams was still representing him.

For these reasons, we reverse the grant of partial summary judgment against Gary individually.

*Summary Judgment on
the Estate's Claims*

The circuit court ruled that, like Gary, the estate could not prevail in a legal malpractice suit against Bill Watkins and, therefore, could not prevail in its case against Adams. The court determined that, as a matter of law, the estate suf-

fered no damages from Watkins's alleged omissions.

■ The existence of a fact question on this issue is apparent. A jury could conclude that Watkins's actions damaged Odis Howard while he was still alive by wrongfully depriving Odis of his property. Odis never signed the trust or the deed of his own accord. Yet, during his lifetime, Watkins encouraged Gary to transfer Odis's land to the trust, despite Gary's lack of authority to do so. If Odis suffered damages prior to his death, his estate could have filed a survival action against Watkins. *McDonald*, 337 Ark. 265, 988 S.W.2d 9. Additionally, Gary sought legal counsel from Adams as the result of Watkins's actions surrounding the trust, and legal fees were incurred in setting aside the deed that transferred Odis's property from his ownership to a trust that he did not establish. Based on Adams's attorney-fee lien against Odis's estate, her services may cost the estate over $600,000. Accordingly, there is the prospect of harm to the estate.

■ |₁₄Adams also argues that she returned Odis Howard's property to the estate and thereby benefited the estate rather than harmed it.[3] Adams did provide that legal service. However, Adams did not finance her efforts with the proceeds from Watkins's malpractice carrier, as she allegedly promised. As a result, the estate has a claim against it for Adams's fees and costs instead of having them paid for by a secondary source.

■ Adams also asserts that she did not contract with the estate. This too is an issue of fact, if for no other reason than Adams has sought payment of her attorney fees from the estate. Moreover, there is evidence that Adams contracted to probate the estate and that she entered into her representation with Gary for the purpose of returning valuable realty to the estate.

Based on the foregoing, we reverse the summary judgment against the estate.

### *Reduction of Estate's Attorney's Fee Request*

Attorney Harry McDermott has performed numerous legal services on behalf of the estate, including obtaining Gary's appointment as administrator; filing Odis's 1960 will for probate; settling several matters with Mabel; and handling at least two lawsuits involving the |₁₅estate's real property. The court awarded Mr. McDermott his fees and costs for the those lawsuits, and that award is not at issue. However, Mr. McDermott's request for approximately $90,000 in fees and $10,000 in costs associated with his probate of Odis's estate and his work in this case against Adams was reduced by the circuit judge to $21,296. (It is not clear if that amount includes costs.) Gary argues on appeal that this drastic reduction was unwarranted. We have serious reservations about the fee reduction, but we decline to rule on the merits of the fee award at this time. Instead, we reverse the award for reconsideration. The circuit court may wish to

---

**3.** We note, for purposes of clarity, that title to real property vests immediately in the heirs or devisees upon the death of the owner. *Farmers Co-op. Ass'n, Inc. v. Webb*, 249 Ark. 277, 459 S.W.2d 815 (1970). If the owner dies testate, real property becomes an asset of the estate when so directed by the will or when the court orders the property sold, mortgaged, leased, or exchanged for payment of claims or other purposes. Ark.Code Ann. § 28–49–101(a) (Repl.2004). If the owner dies intestate, title to his real property vests immediately in his heirs subject to the personal representative's right to sell, mortgage, lease, or exchange it for payment of claims or other purposes. Ark.Code Ann. § 28–9–203(c)(1) (Repl.2004).

revisit its ruling in light of our disposition of this appeal.

Reversed.

VAUGHT, C.J., and GRUBER, J., agree.