

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-13-935

| | |
|---|---|
| LAUREN ADAMS and ADAMS, BRADY & JACKSON, PLLC<br><br>APPELLANTS<br><br>V.<br><br>GARY HOWARD, Individually and as the Administrator of the Estate of Odis Howard, Deceased<br><br>APPELLEE | **Opinion Delivered** May 28, 2014<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. P-03-461]<br><br>HONORABLE XOLLIE DUNCAN, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Lauren Adams and her law firm, Adams, Brady & Jackson, PLLC, appeal from an order that established the manner in which they could recover their fee for representing appellee Gary Howard.[1] We affirm the court's order.

### I. *Background*

The events leading to this case began over fifteen years ago and have generated two prior appeals: *Howard v. Adams*, 2009 Ark. App. 621, 332 S.W.3d 24 (*Howard I*), and *Howard v. Adams*, 2012 Ark. App. 562, 424 S.W.3d 337 (*Howard II*). The case history can be found in those opinions, but we will reiterate the relevant facts for ease of understanding.

In 2002, Adams represented Gary Howard in a suit against his stepmother, Mabel Howard. The purpose of the suit was to recover approximately forty-six acres of land from a trust that held the assets of Gary's late father, Odis. Gary had been a beneficiary and co-

---

[1]For convenience, we will refer to Lauren Adams as the sole appellant.



trustee with Mabel, but, with the assistance of attorney Bill Watkins, Mabel amended the trust to reduce Gary's beneficial interest and eliminate his role as trustee.

Adams successfully recovered the realty in February 2005 and placed the property into Odis's estate, of which Gary was the sole heir. Mabel's dower and homestead interests as Odis's widow were later settled for $110,500.

Once the property was recovered, a dispute arose over Adams's fee. Gary insisted that Adams had promised to collect her fees via a legal-malpractice claim against Watkins. Adams denied making that arrangement and said that the terms of her representation were governed by the following contingency-fee contract:

> [Adams] will be entitled to the following percentages of any damages award collected on behalf of [Gary]:
>
> 33% of all amounts recovered after filing suit.

According to Adams, the terms of this agreement meant that her fee would be one-third of the property's $1.8 million value as of the date it was recovered in February 2005. She filed a claim against Odis's estate for "33% of the real property recovered or the sum of $613,333," and an attorney-fee lien for "33% of the proceeds derived from the [46 acres] including but not limited to sale proceeds . . . ."

In August 2005, Gary sued Adams for breach of contract, deceit, and negligence, claiming that she had wrongfully sought her attorney's fees from the estate rather than from Watkins's malpractice insurer. In a pretrial order dated February 16, 2007, the court ruled that Adams's attorney-fee lien was "properly in place against the real estate." However, the court found that questions remained over whether Adams had agreed to collect part of her fees from

Watkins's malpractice carrier. The court declared that Gary must try his case to a jury if he wished to offset Adams's fee claim.

The trial was held in January 2011, and the jury awarded no damages to Gary or the estate. While the case was on appeal, Gary continued his long-standing efforts to sell the forty-six acres. The property's worth had purportedly dropped after being appraised at $2 million in 2006, and, as of 2011, it still had not sold. Adams's attorney-fee lien therefore remained unsatisfied.

In March 2011, Adams asked the court to establish her fee as $613,333, given that Gary's lawsuit yielded no offsets. Gary responded that, if the property were sold, Adams should recover a third of any sales price, less the $110,500 paid to Mabel. He also claimed that Adams should receive "one-third of the real estate itself" as her fee.

On July 24, 2013, the circuit court entered an order that allowed Adams to foreclose on her attorney-fee lien. The court ruled, however, that Adams's fee would be based on the price of the land in an upcoming sale:

> It is the decision of the Court that, because of the wording of the contract, [Adams is] entitled to foreclose [her] lien against the real estate, but that at a sale of the real estate, whether by forced sale on the courthouse steps or on the open market, [Adams] is entitled to receive 33% of the net sales price of the real estate.

> Further, the amount previously paid to Mabel Howard for her interest is to be deducted from the full sales price of the real estate, after which time the 33% will be set aside to Adams . . . . In other words, the entire $110,500 will not come from the 33% set aside to Adams . . . but will be deducted from the total sales price prior to the computation of the 33% that will represent [Adams's] lien . . . .



Adams appeals from that order.[2]

## II. *Interest in Land*

Adams argues first that Gary is barred from claiming that her fee should consist of an ownership interest in the forty-six acres. We need not address this point. The circuit court did not grant Adams an ownership interest in the property but permitted a monetary recovery in the form of a percentage of the property's sales price. Any discussion of this issue would therefore be academic. Our court does not decide academic questions. *See Kuelbs v. Hill*, 2010 Ark. App. 427, 379 S.W.3d 47.

## III. *Method of Calculating the Fee*

Adams argues next that the court erred in calculating her fee as a percentage of the property's future sales proceeds. She contends that her fee should be established as $613,333—one-third of the property's $1.8 million value at the time it was recovered in February 2005. We disagree.

Adams's contract with Gary did not establish a method of calculating her fee; it simply stated that the fee would be one-third of the "amount recovered." Given that she was hired to recover real property and—as she herself argues—her fee was to be paid in dollars, Adams should have realized that the property must be sold at some point to satisfy her lien. She therefore took the risk that the amount of her fee would depend on the proceeds generated by the property's sale. Consistent with this, Adams filed her lien for thirty-three percent of

---

[2]Because this is a probate matter, all orders are immediately appealable, with exceptions not applicable here. *Howard I*, 2009 Ark. App. 621, 332 S.W.3d 24.



the "proceeds" from the property. Thus, the circuit court could reasonably have concluded that Adams's fee would not be fixed until a sale of the property occurred.

Adams relies on *Simler v. Conner*, 352 F.2d 138 (10th Cir. 1965), *Rector v. Compton*, 62 Ark. 279, 36 S.W. 898 (1896), and other authorities for the proposition that her fee should be determined as of the date she recovered the property. While those cases bear similarities to the situation before us, the facts here are unique with regard to the parties' representation contract. Given the circumstances, we cannot say that the circuit court clearly erred in the method it employed to establish the amount of Adams's lien. *See May Constr. Co., Inc. v. Town Creek Constr. & Dev., LLC*, 2011 Ark. 281, 383 S.W.3d 389 (applying the clearly erroneous standard in reviewing the calculation of a lien amount).

### IV. *Legal Bar and Estoppel*

Adams asserts that Gary is barred by law of the case, laches, and judicial estoppel from claiming that her contingency fee should be calculated on the future sales price of the property. We see no bar to Gary's claims.

Law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal, as well as those that might have been presented, but were not, in a prior appeal. *Carter v. Cline*, 2013 Ark. 398, ___ S.W.3d ___. According to Adams, law of the case prevents Gary from challenging the February 2007 order that validated her fee because he failed to challenge the fee in his prior appeals. However, the February 2007 order, by its own terms, was limited to the issue of whether Adams's lien was properly in place. It did not set Adams's fee amount or establish a method of calculating her fee. Consequently,



the amount of Adams's fee could not have been challenged by Gary in the earlier appeals.

With regard to laches, it is an equitable doctrine that requires a detrimental change in position by one party and an unreasonable delay by the other party. *See Gable v. Anthony*, 2010 Ark. App. 757. The application of laches is based on the particular circumstances of each case and is a question of fact for the trial court. *See id.*

Adams argues that Gary delayed in challenging her fee and precluded her from "pursuing a partition action to enforce her ownership interest in the subject property" when real-estate prices were "at an all-time high," apparently referring to the years 2005–06. We first restate that Adams was not granted an ownership interest in the property, so her claim of delay in seeking a partition is not well-taken. In any event, we do not believe the circuit court was bound to find that Gary occasioned any unreasonable delays with regard to Adams's fee. It was not until 2011 that a trial was held to determine the crucial matter of whether there were any offsets to the fee.

Finally, on the matter of judicial estoppel, a prima facie case consists of the following elements: (1) a party must assume a position that is clearly inconsistent with a position taken in an earlier case or in the same case; (2) a party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (9)(3) a party must have successfully maintained the position in an earlier proceeding such that the court relied on the position taken; and (4) the integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken. *Purser v. Buchanan*, 2013 Ark. App. 449. The doctrine of judicial estoppel is not to be applied in an unduly strict manner; it is

intended to protect the integrity of the courts, not as a technical defense for litigants to derail a potentially meritorious claim. *See Mitchell v. Ramsey*, 2011 Ark. App. 9, 381 S.W.3d 74.

Adams argues that Gary previously asserted that her fee amount was $613,333 and that he should be judicially estopped from saying otherwise. She specifically points to Gary's response to her motion in limine filed before the 2011 trial on the issue of whether he and the estate were damaged by the attorney-fee lien. Gary responded to the motion by arguing that Adams's lien of $613,333 was not uncertain or speculative and that the lien amount had been established by the court.

Unquestionably, Gary's current position with regard to the lien amount is inconsistent with his above statements. However, inconsistency alone is not enough to establish a prima facie case for judicial estoppel; all four of the above elements must be proved. Nothing in the record indicates that the court, in deciding on the motion in limine, relied on Gary's representations as to the amount of the lien. Nor does Adams sufficiently explain how the court so relied. We therefore are not persuaded that reversible error occurred.[3]

## V. *Deduction of Dowry Amount*

The court ruled that the $110,500 paid for Mabel's dower and homestead interests would be deducted from the sales price of the property and that, following that deduction,

---

[3]Adams's argument heading also asserts the bars of res judicata and collateral estoppel. However, the body of her argument does not discuss these doctrines on this particular point. If an argument heading raises an issue but the body of the argument does not address the issue, we will not reach it on appeal. *See Jones v. McLemore*, 2014 Ark. App. 147, ___ S.W.3d ___. In any event, the doctrines do not bar Gary's claims for the same reasons stated earlier in this opinion.

Adams's fee would be set as one-third of the remaining proceeds.

Adams argues that the court erred in deducting the dower amount before calculating her fee. However, Adams had already agreed to the court's action. In a pretrial hearing, she stated that she would be entitled to a third of the value of the real estate "only after [Mabel's] dower interest is deducted." She also stated in a trial brief that she "agreed that the value of the recovery should be reduced by [the] amount [Gary] has paid to the decedent's surviving spouse, Mabel Howard, prior to the determination of her contingency fee." An appellant cannot complain on appeal that the trial court erred if the appellant induced, consented to, or acquiesced in the court's position. *See Colquitt v. Colquitt*, 2013 Ark. App. 733, ___ S.W.3d ___.

## VI. *Prejudgment Interest and Attorney's Fees*

Adams argues that she is entitled to prejudgment interest on the amount of her fee from the date the property was recovered in February 2005, and that she is entitled to attorney fees as the prevailing party in a contract action. *See* Ark. Code Ann. § 16-22-308 (Repl. 1999). Because we have affirmed the circuit court's ruling that the fee will not be determined until a future sale of the property, prejudgment interest is not available. Nor is Adams the prevailing party for the purpose of an award of attorney's fees under section 16-22-308.

Affirmed.

VAUGHT and BROWN, JJ., agree.
*Tamra Cochran*, for appellants.
*Harry McDermott*, for appellees.

8